**STATE of Missouri, Respondent,**

v.

**Tammy P. KNIFONG, Appellant.**

**No. WD 58739.**

Missouri Court of Appeals, Western District.

June 26, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

Kathryn Neal Benson, Fulton, for appellant.

Robert R. Sterner, Pros. Atty., Geoff Preckshot, Asst. Pros. Atty., Fulton, for respondent.

RONALD. G. HOLLIGER, Judge.

On April 18,1999, Appellant Tammy Knifong patronized the Post Office Bar and Grill, eating dinner at the establishment and consuming alcoholic beverages. Knifong claimed at trial that she only consumed 2.5 beers between 10:00 P.M. and 1:15 A.M., but admitted that she had taken Effexor, an antidepressant medication, earlier that day, as well as a prescription decongestant sometime that evening. During her time at the establishment, Knifong offered to give a friend a ride home that evening, and went out to her vehicle to wait for her friend. She waited for an undefined period of time, then drove out of the parking lot, thinking that perhaps her friend had not found her and had started to walk home. By this point, it was approaching 2:00 A.M.

Palmer, the arresting officer, attempted to stop Knifong roughly three to four blocks after she had left the parking lot, as she had failed to turn on her vehicle's headlights. Knifong did not pull over until they had traveled another two blocks. Palmer videotaped the encounter with Knifong which followed, including the field sobriety tests administered by the officer.[1] Palmer testified at trial that he smelled "the odor of intoxicants" coming from Knifong's vehicle. He also testified that Knifong's eyes were bloodshot and watery at the time of the stop, and that her speech was slurred. Palmer's testimony indicates that he had some difficulty understanding Knifong due to her accent, however. Palmer also testified that during the stop he saw a half-full bottle of beer in a cup holder in Knifong's vehicle.

During his encounter with Knifong, Palmer administered a horizontal gaze nystagmus (HGN) test. The officer testified that Knifong exhibited 5 of the 6 possible indicators of intoxication on that test. Palmer then administered a "one-leg stand" test and a "walk-and-turn" test to Knifong. At first, Knifong could not stand on one leg without swaying and hopping for more than five to six seconds. Upon Knifong's third attempt, she was still unable to remain on one foot for the full 30 seconds, but was able to comply for approximately 22 seconds. Knifong was similarly only partially able to complete the "walk-and-turn" test. Evidence and testimony indicated that Knifong was belligerent and uncooperative at points during her contact with Palmer. Knifong subsequently claims that this was because she had allegedly been sexually harassed by another Fulton police officer a week previously, and thought her stop was related to that incident.

Palmer placed Knifong under arrest for DWI based upon the officer's observations and Knifong's performance on the field sobriety tests. After being taken to the police station and informed of her rights under *Miranda* and the implied consent law, Knifong initially refused to submit to a breath test. She refused again 20 minutes later, apparently claiming that she could not take the test due to being on prescription medication. Knifong states that she was aware of the warning on her antidepressant medication that she was to avoid alcohol and was unsure whether it would affect her breath test results. Knifong also admitted during questioning by the officer that she was "under the influence" of an alcoholic beverage, but was confused as to the difference between merely being "under the influence" and actual impairment. The booking room

---

1. This videotape was also admitted into evidence at trial.

procedures were also videotaped and shown to the jury.

This matter proceeded to jury trial on May 2, 2000. The central issue permeating the trial, from voir dire through the instruction conference, was the distinction between being "under the influence" and intoxication causing actual impairment. Knifong's counsel objected to the State's verdict director on the grounds that the definition of intoxication did not adequately inform the jury as to what the offense of intoxication was, in violation of Knifong's due process rights. In her motions for acquittal, Knifong also briefly made oral argument suggesting that the charging statute was unconstitutionally vague.

At the conclusion of trial, the jury returned a guilty verdict, and Knifong was sentenced to one count of Driving While Intoxicated. Due to her criminal history, she was also sentenced as a prior offender. Knifong subsequently filed a motion for judgment notwithstanding the verdict, or alternatively for new trial, raising in greater detail her constitutional arguments against the DWI statue and the state's verdict director, among other issues. This motion was overruled, and Knifong was sentenced to 90 days in the county jail. That sentence was suspended and Knifong was placed on two years probation. This appeal follows.

Knifong raises three points on appeal. She first contends that the trial court erred in denying her motions for acquittal and for judgment notwithstanding the verdict or for new trial because the definition of "intoxicated condition" in § 577.001, RSMo 1994, is unconstitutionally vague, in violation of the Fifth and Fourteenth Amendments. For her second point, Knifong argues that the trial court erred in overruling her objection to the State's verdict director. In this point, Knifong relies on the same vagueness argument as stated in her first point, suggesting that this vagueness leads to jury confusion and could cause inconsistent jury verdicts arising from the same or similar evidence. For her final point on appeal, Knifong contends that the trial court erred in denying her motions for acquittal and JNOV/ new trial because the State failed to establish beyond a reasonable doubt that she was intoxicated while operating her vehicle.

█ For her first point, Knifong musters an argument that the definition of "intoxicated condition" in § 577.001, RSMo 1994, is unconstitutionally vague, in violation of the Fifth and Fourteenth Amendments. Specifically, Knifong contends that the statutory definition "uses terminology that implies a variety of levels and manners of influence by alcohol ... forcing people of ordinary intelligence to guess at its meaning, and fails to provide explicit standards necessary to avoid arbitrary and discriminatory application by the state and its agents." The thrust of Knifong's argument appears to be that the statute permits conviction if the defendant is under *any* amount of influence of an intoxicating substance, however minimal. Knifong suggests that the statute fails to establish any borderline level of intoxication, such as intoxication to the point of impairment, making it impossible for individuals to determine when they would be in violation of the law.

█ The parties appear to concede that Knifong's first point on appeal presents more than a colorable attack on the validity of the DWI statute. If a defendant has raised and preserved for appeal such an argument alleging the constitutional invalidity of a Missouri statute, this court does not have jurisdiction to hear the issue. *See Hatfield v. McCluney (In re Estate of McCluney)*, 871 S.W.2d 657, 659 (Mo.App.1994). In such circumstances, we

are required to transfer the case to the Missouri Supreme Court for resolution of the issue. *Id.* It is essential, therefore, that we examine whether the constitutional issue was properly preserved by Knifong. To preserve a constitutional issue, it must be "raised at the earliest time consistent with good pleading and orderly procedure." *State v. Flynn,* 519 S.W.2d 10, 12 (Mo.1975). There are also strict requirements as to how the substance of that constitutional issue is to be raised:

> To properly raise a constitutional issue, a party must (1) raise the constitutional issue at the first available opportunity, (2) specifically designate the constitutional provision claimed to have been violated by express reference to the article and section of the constitution or by quoting the provision itself, (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*State v. Hyde,* 682 S.W.2d 103, 105 (Mo. App.1984); *see also State v. Tatum,* 653 S.W.2d 241, 243 (Mo.App.1983). If a party fails to properly preserve an argument that a statute is constitutionally invalid, the issue cannot be considered on appeal. *See State v. Belcher,* 805 S.W.2d 245, 251 (Mo.App.1991).

Here, Knifong's argument that § 577.001 is unconstitutionally vague was not presented in either of her written motions for acquittal. Her counsel made additional oral arguments, at the time those motions were presented, that the DWI statute was vague and thus violated her due process rights. However, in our view, counsel's arguments do not meet the requirements articulated in *State v. Hyde.* Nowhere do counsel's arguments identify which constitution (state or federal) is implicated, or identify specific sections of that constitution. *See State v. Tatum,* 653 S.W.2d at 243. Nor are counsel's argu-ments particularly clear as to what constitutes the alleged infirmity of the statute.

■ Knifong failed to present a fully articulated claim that the DWI statute was constitutionally infirm until her motion for new trial. A motion for new trial is too late to properly assert and preserve a claim that a statute is constitutionally invalid. *See State v. Collins,* 587 S.W.2d 303, 307–08 (Mo.App.1979); *State v. Flynn,* 519 S.W.2d at 12. Knifong's constitutional attack upon the validity of § 577.001 has not, therefore, been properly preserved. As a result, we may retain jurisdiction over this case, but can neither consider nor rule upon the merits of her constitutional argument. *See State v. Belcher,* 805 S.W.2d at 251. Point one is denied.

■ For her second point on appeal, Knifong argues that the trial court erred in overruling her objection to the State's verdict director. In this point, Knifong argues that the verdict director is unconstitutionally vague, relying upon an argument parallel to that contained within her first point on appeal. Knifong argues that this vagueness leads to jury confusion and could result in inconsistent jury verdicts arising from the same or similar evidence. The State replies by stating that the instruction tendered complies with the requirements of MAI CR3rd, is in conformity with existing law, and is neither confusing nor misleading. The State takes the position that the instruction does not force persons of common intelligence to guess at its meaning.

■ This point on appeal is closely related to Knifong's first point on appeal, and we must also ask whether she has properly preserved her constitutional argument for appeal. As with her attack on the statute, her instructional challenge must be "raised at the earliest time consis-

tent with good pleading and orderly procedure and must be kept alive during the course of the proceedings." *State v. Zismer*, 696 S.W.2d 349, 351 (Mo.App.1985). The constitutional argument must also be raised with specificity. *Id.*

We observe that the only appearance in the trial transcript of any challenge to the verdict director was a cursory statement made by Knifong's counsel during the instruction conference:

> MS. BENSON: I have an objection to the verdict director, Judge, in that the definition that that provides of intoxication, that being under the influence, does not adequately inform the jury as to what intoxication is and what behavior is proscribed by that instruction and the statute and, therefore, violates defendant's due process rights.

We find that this statement is not sufficiently specific to raise the constitutional issue. It does not discuss specific provisions of the United States or Missouri constitution, nor does it truly describe why the verdict director is in violation of some constitutional provision. While Knifong's arguments were more fully fleshed out in her motion for new trial, we hold that this was too late to preserve her constitutional attack upon the verdict director. Knifong's second point on appeal is denied.

■ For her last point on appeal, Knifong contends that the trial court erred in denying her motions for acquittal and for judgment notwithstanding the verdict, or in the alternative for new trial, because the State failed to establish beyond a reasonable doubt that she was intoxicated while operating her vehicle. Specifically, she argues that the evidence does not establish that she was "under the influence" since she was not shown to have any impairment of mental faculties or physical capabilities rendering her unsafe to operate a motor vehicle. In response, the State argues

that the evidence was sufficient to prove beyond a reasonable doubt that Knifong was driving her motor vehicle while intoxicated.

■ Knifong's argument here is essentially that the evidence at trial was not sufficient to support the jury's verdict. In reviewing such claims, we must view the evidence in the light most favorable to the verdict. *State v. Williams*, 847 S.W.2d 111, 113 (Mo.App.1992). We must give the state the benefit of all reasonable inferences. *State v. Hoyt*, 922 S.W.2d 443, 447 (Mo.App.1996). We must also discard all contrary inferences that can be drawn from the evidence, unless "they are such a ... logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). If the evidence, viewed in that light, would support a reasonable juror in finding each element of the offence beyond a reasonable doubt, we must affirm the verdict. *Id.*

■ The elements of driving while intoxicated are contained within § 577.010, RSMo, which provides that "[a] person commits the crime of 'driving while intoxicated' if he operates a motor vehicle in an intoxicated or drugged condition." An "intoxicated condition" is further defined by § 577.001.2 as "under the influence of alcohol, a controlled substance, or drug, or any combination thereof." The state's burden of proof can be met solely through the testimony of "any witness who had a reasonable opportunity to observe an alleged offender." *Williams*, 847 S.W.2d at 113.

■ Here, there is no evidence of Knifong's actual blood alcohol level at the time she was stopped by officer Palmer. However, there was substantial evidence before the jury from which it could determine that Knifong was intoxicated at the time. The jury heard testimony from Palmer

that upon his initial encounter with Knifong he noticed that she smelled of alcohol, had watery and bloodshot eyes, and had slurred speech. The jury also heard testimony from Palmer regarding Knifong's apparent difficulties in performing the field sobriety tests. Videotapes were also presented to the jury showing Knifong's behavior during the stop and while she was at the booking station. Evidence was also adduced that Knifong was aware of warnings advising her not to consume alcohol while taking the antidepressant medication Effexor. Pursuant to § 577.041.1, RSMo, the jury could also consider Knifong's refusal to submit to a breathalyzer exam as evidence supporting her guilt. *State v. Corum*, 821 S.W.2d 890, 891 (Mo. App.1992).

Knifong posits alternative explanations to explain or mitigate much of the evidence offered against her. It is not our role, however, to weigh anew the evidence offered at trial. Nor are Knifong's alternate explanations such logical extensions of the evidence that a reasonable juror could not disregard them. *See Grim, supra*, at 411. We note that Knifong's counsel conducted a thorough cross-examination of the arresting officer, and presented affirmative evidence on behalf of Knifong. Her counsel also devoted considerable time during closing argument to the interpretation and weight to be afforded the evidence adduced by both parties at trial.

While the state and Knifong presented conflicting interpretations of the evidence presented, it was the province of the jury to weigh that evidence and determine the credibility each piece of evidence should be given. *See State v. Shinn*, 921 S.W.2d 70, 73 (Mo.App.1996). Towards that end, the jury is free to believe (or disbelieve) all, some, or none of the testimony with which it is presented. *Id.* The arguments put forward by Knifong on appeal fail to show that the jury's verdict was against the weight of the evidence. Viewing the evidence in the light most favorable to the verdict, we find that there was sufficient evidence to support the jury's verdict. Knifong's third point on appeal is denied.

Having found that no reviewable error occurred in the proceedings below, the judgment of the trial court is hereby affirmed.

THOMAS H. NEWTON, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.