**STATE of Missouri, Respondent,**

v.

**Richard D. GREENLEE, Appellant.**

**No. ED 93792.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 21, 2010.

Mark A. Kennedy, Kennedy, Kennedy, Robbins & Yarbro, LC, Poplar Bluff, MO, for Appellant.

Chris Koster, Attorney General, Terrance M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Judge.

*Introduction*

Richard Greenlee (Greenlee) appeals from the trial court's judgment following a jury conviction for first-degree statutory sodomy. Greenlee was subsequently sentenced as a prior offender to life imprisonment. Finding none of Greenlee's nine points to have merit, we affirm the judgment of the trial court.

## Background

The State of Missouri (State) charged Greenlee as a prior offender [1] with first-degree statutory sodomy as a result of an incident in which the State alleged Greenlee had deviate sexual intercourse with a child under twelve years old.

Viewed in the light most favorable to the verdict, the evidence adduced at trial indicated that Greenlee and his girlfriend, Maria Page (Page), were overnight guests at the apartment of Page's friend, D.B. (Mother). Also in the house that night was Mother's boyfriend and Mother's two children, a four-year-old, H.S. (Victim), and a ten-month-old infant.

In the early morning hours of December 23, 2006, Mother was awakened by the infant's crying. When Mother went to the kitchen to make the infant a bottle, she walked past the living room where Victim was sleeping on the couch. Mother observed Greenlee in the living room, leaning over Victim. Mother testified that she then saw Greenlee take his hand out of Victim's underwear, move his hand toward his face, lick his finger, and put it back in Victim's underwear.

Greenlee was later arrested and charged with first-degree statutory sodomy.

Greenlee's trial, first held on June 26, 2008, resulted in a mistrial. Greenlee was again tried on August 27, 2009. The jury returned a verdict of guilty on the charge of first-degree statutory sodomy. The trial court entered its judgment on the jury's conviction and sentenced Greenlee to life in prison. Additional facts related to the crime and trial which are relevant to the points on appeal are discussed below.

Greenlee filed a Notice of Appeal with this Court and this appeal follows.

## Points on Appeal

Greenlee presents nine points on appeal. First, Greenlee alleges the trial court erred in overruling his motion to dismiss due to misconduct by the State because of pre-trial publicity. In his second point, Greenlee claims the trial court erred in denying his Motion to Dismiss Due to Failure of the State to Grant a Speedy Trial. Third, Greenlee asserts that the trial court erred in refusing to compel the State to allow his expert to interview Victim or Mother, view Victim's taped testimony, read Mother's deposition, or review the examining doctor's statements and medical records. In his fourth and fifth points on appeal, Greenlee claims the trial court erred in sustaining the State's motions in limine which limited Greenlee's cross-examination of Mother and prevented the presentation of Greenlee's expert testimony. Sixth, Greenlee asserts the trial court erred in compressing a two-day trial into one day and improperly coercing the jury into returning a guilty verdict. In his seventh point on appeal, Greenlee alleges the trial court erred in overruling his motions for directed verdict and judgment of acquittal because there was insufficient proof as to each element of first-degree statutory sodomy. Eighth, Greenlee claims the trial court erred in refusing to submit the case to the jury on the lesser included offense of first-degree sexual misconduct. In his ninth point on appeal, Greenlee alleges the trial court erred in giving its verdict directing instruction because the instruction was unconstitutionally void because of vagueness.

## Discussion

### Point 1. Prosecutorial Misconduct Regarding Pre–Trial Publicity.

In his first point on appeal, Greenlee argues that the trial court erred in over-

---

1. Greenlee was charged as a prior offender under Section 558.016 because he previously pleaded guilty to involuntary manslaughter in June 2000.

ruling his Motion to Dismiss for Misconduct by the State. Greenlee claims that he did not receive a trial by an impartial jury, free from outside influence, because both the prosecutor and Mother discussed the case, by name, in newspaper articles and radio programs immediately prior to trial.

Prior to the start of his second trial, Greenlee filed a Motion to Dismiss for Misconduct by the State. In his motion, Greenlee alleged that the prosecutor, along with Mother, who was employed by the radio station, made radio broadcasts regarding Greenlee's pending case. Greenlee claimed that the prosecutor and Mother commented on the evidence and Greenlee's guilt in an effort to taint potential jurors. Greenlee also claimed that the prosecutor made references to Greenlee's case in newspaper articles in an effort to taint potential jurors.

At a pre-trial motion hearing, the trial court found no prosecutorial misconduct and denied Greenlee's motion. The trial court went on to note that voir dire could be used to determine if any of the prospective jurors knew about, read about, or heard about the case prior to trial.

### A. Pre–Trial Publicity

■ Regarding pre-trial publicity, the United States Supreme Court has noted that:

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.

*Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). As such, courts do not require that jurors be "ignorant of the facts and issues reported by the media." *State v. Johns*, 34 S.W.3d 93,

107 (Mo. banc 2000). Instead, in evaluating the impact of potentially prejudicial publicity on prospective jurors, "the critical question is not whether the jurors remember the case, but whether they have such fixed opinions regarding the case that they could not impartially determine the guilt or innocence of the defendant." *Id.*

■ Greenlee has failed to demonstrate that the jury pool was tainted by the alleged pre-trial publicity, much less that any of the jurors had such "fixed opinions regarding the case that they could not impartially determine the guilt or innocence." *See id.* The record shows that the venirepersons were questioned regarding pre-trial publicity during voir dire. Prospective jurors were specifically asked whether anyone had heard of the case, either through word of mouth, media, radio, or newspaper. Only two prospective jurors responded that they had heard of the case. One venireperson responded that she may have heard about the case through word of mouth, but did not know any of the specifics of the case. Another prospective juror responded that he read about the case and discussed it at work. Both of those prospective jurors were struck for cause. Greenlee presented no evidence that any of the members of the jury panel selected to hear his case were aware of any pre-trial publicity or that any of the jurors had "such fixed opinions regarding the case that they could not impartially determine the guilt or innocence of the defendant." *See id.*

### B. Prosecutorial Misconduct

With regard to Greenlee's allegations of prosecutorial misconduct, Rule 4–3.6 of the Missouri Rules of Professional Conduct governs a lawyer's actions with regard to trial publicity. This Rule provides that a lawyer who is participating in the investigation or litigation of a matter "shall not make an extrajudicial statement that the

lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Supreme Court Rules of Prof. Conduct Rule 4–3.6. The Rule goes on to list the type of information that a lawyer may state, including "the claim, offense, or defense involved, and, except when prohibited by law, the identity of the persons involved," information contained in a public record, that an investigation of a matter is in progress, and the scheduling or result of any step in litigation. *Id.*

■ During the pre-trial motion hearing regarding the alleged prosecutorial misconduct, Greenlee indicated to the trial court that a newspaper article was written regarding his upcoming trial. However, as the State pointed out and the trial court agreed, the newspaper article was written by a reporter citing simple information regarding Greenlee's case. Greenlee did not present any evidence regarding misconduct by the prosecutor with regard to the article.

■ Greenlee also alleged prosecutorial misconduct with regard to a radio broadcast at a radio station where Mother worked. The evidence adduced at the pretrial hearing showed that the prosecutor participated in monthly radio broadcasts for years. In these broadcasts, the prosecutor discussed basic information about a case, including the date of the trial, the nature of the charges, and the range of punishment. At the pre-trial hearing, the prosecutor testified that she was "extremely careful to abide by the ethical rules of conduct to discuss only what [she is] allowed to under the rules of professional conduct." The prosecutor acknowledged Greenlee's case was mentioned on the radio show a month or two prior to the hearing. However, as the trial court stat-

ed, and the State now argues, the issue of publicity was covered during voir dire. Greenlee has failed to present any evidence of prosecutorial misconduct by the State. From the record it appears the information discussed in the radio broadcast or mentioned in the newspaper was clearly within the purview of Rule 4–3.6. Furthermore, the only two potential jurors who had previously heard of the case were stricken for cause, leaving a jury panel unfamiliar with any pre-trial publicity. Greenlee has failed to demonstrate otherwise.

While there may have been scant media coverage of Greenlee's case and the prosecutor may have contributed to that coverage, none of the jurors who served during the trial had fixed opinions preventing them from judging impartially whether Greenlee was guilty. The record contains no evidence that the prosecutor acted improperly when publicizing any information about Greenlee's case prior to trial. We find no evidence in the record that Greenlee did not receive a fair trial. Point one is denied.

*Point 2. Speedy Trial.*

Greenlee claims in his second point on appeal that the trial court erred when it overruled his Motion to Dismiss Due to Failure of the State to Grant a Speedy Trial. Greenlee asserts he was denied his right to a speedy trial because: (1) the delay exceeded fourteen months, (2) there was no unavoidable reason for the delay, (3) he properly asserted his right to a speedy trial, (4) his incarceration was oppressive, (5) he had heightened anxiety and concern due to a beating and threats during incarceration, and (6) his case was prejudiced by the delay.

Greenlee was charged on May 21, 2007, and filed a Motion for Speedy Trial on June 5, 2007. Greenlee's trial was origi-

nally set for December 12, 2007. On December 7, 2007, Greenlee made an oral motion for continuance, which the trial court granted. Greenlee claims he was "forced" to request the continuance because the State did not respond to his repeated motions to produce Victim's father for deposition, the State refused to turn over lab reports, and the State filed a substitute information. Greenlee further asserts he was forced to request a continuance in order to have an opportunity to depose the lab technician, whose report was not presented to Greenlee until December 7, 2007, after the trial court granted his Motion to Compel Disclosure of Possible Exculpatory Evidence.

Greenlee's trial was reset to June 26, 2008. That trial resulted in a hung jury and a mistrial was declared.

A new trial was scheduled for March 11–12, 2009. The trial court later removed the trial from the docket because of a court scheduling conflict. On February 20, 2009, the case was reset for trial on August 27, 2009. The August 27, 2009 trial resulted in Greenlee's conviction for first-degree statutory sodomy. Greenlee claims this delay resulted in a violation of his right to a speedy trial.

■ A defendant's right to a speedy trial arises under the Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment. *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 910–11 (Mo. banc 2010). The Missouri Constitution provides equivalent protection for a defendant's right to a speedy trial. *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 729 (Mo. banc 2007). Orderly expedition of a case, not mere speed, is the essential requirement behind a speedy trial. *State v. Bell*, 66 S.W.3d 157, 164 (Mo.App. S.D.2001). However, deprivation of the right to a

speedy trial is not considered *per se* prejudicial to a defendant. *Id.*

■ The determination of whether there has been a violation of a defendant's constitutional speedy trial rights involves a balancing process. *Goldman*, 316 S.W.3d at 911. In analyzing whether a defendant's rights to a speedy trial have been violated, courts consider and balance all of the circumstances, and weigh four factors as set forth by the United States Supreme Court in *Barker v. Wingo:* (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ Regarding the first factor, the length of the delay is a "triggering mechanism," in that until there is a delay considered to be presumptively prejudicial, there is no need to discuss the other three factors that are part of the balancing process. *Goldman*, 316 S.W.3d at 911. In Missouri, courts have determined that a delay of greater than eight months is presumptively prejudicial to the defendant. *Id.*, *Riley*, 240 S.W.3d at 729. Greenlee was charged on May 21, 2007, and remained in jail until his first trial on June 26, 2008, a period of approximately thirteen months. After his first trial resulted in a mistrial, Greenlee remained incarcerated until his second trial on August 27, 2009, a further delay of approximately fourteen months. Whether we analyze the delay period until the first trial or second trial is irrelevant as both delays are presumptively prejudicial and thus require inquiry into the remaining three factors.

■ The second factor this Court must examine is the reason for the delay. "The burden is upon the [S]tate to accord an accused a speedy trial, and if there is delay it becomes incumbent upon the

[S]tate to show reasons which justify that delay." *State v. Holmes,* 643 S.W.2d 282, 287 (Mo.App. W.D.1982). Different weights are assigned to different reasons for a delay. *Goldman,* 316 S.W.3d at 911. Delays deliberately intended to hamper the defense are weighed heavily against the State, however to the extent that any delays were due to the trial court's docket, those delays should be weighted less heavily against the State. *Riley,* 240 S.W.3d at 730; *State v. Drudge,* 296 S.W.3d 37, 43 (Mo.App. E.D.2009); *State v. Farris,* 877 S.W.2d 657, 660 (Mo.App. S.D.1994). Trial court related docket delays should nevertheless be considered because the ultimate responsibility for such circumstances must rest with the government rather than the defendant. *Riley,* 240 S.W.3d at 730; *Drudge,* 296 S.W.3d at 43. On the other hand, where a defendant has contributed to the delay by requesting, and being granted, continuances, he cannot later successfully allege the denial of his right to a speedy trial. *Farris,* 877 S.W.2d at 660. "Delays attributable to the defendant weigh heavily against the defendant." *Farris,* 877 S.W.2d at 660 (internal quotations omitted).

 There are two relevant events which caused delays in Greenlee's trials. Greenlee's first trial was initially scheduled to occur less than seven months from the date Greenlee was charged. Greenlee then moved for a continuance less than a week before his trial date. While Greenlee claims he was "forced" to file this continuance due to the State's failure to respond to requests for information, Greenlee fails to present any evidence in the record to substantiate his assertions. The trial was reset within six months of the request for continuance. Because the record before us does not reveal in what regard Greenlee was "forced" to move for a continuance, we find that that the delay

in initially trying his case is attributable to Greenlee.

Greenlee's second trial was originally scheduled for March 11–12, 2008. The retrial was later continued until August 27, 2009. The reason for the delay as stated on the docket sheet was, "the Court has today received notice of a meeting of all State Court Presiding Judges which conflicts with all Trial Settings on March 11 and 12, 2009." While docket issues and court scheduling delays are weighed against the State, these delays are not weighed as heavily as those that are deliberately intended to hamper the defense. *See Bell,* 66 S.W.3d at 164. We find none of the delay between the mistrial and second trial attributable to Greenlee.

The third factor to consider is whether the defendant asserted his right to a speedy trial. Greenlee asserted his right to a speedy trial on June 5, 2007, less than a week after he was charged. Both parties agree that this factor weighs in favor of Greenlee.

 In Missouri, the fourth factor, prejudice to the defendant, is considered to be the most important of the four factors. *Drudge,* 296 S.W.3d at 43. "There are three considerations in determining whether a delay has prejudiced the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation on the possibility that the defense will be impaired." *Goldman,* 316 S.W.3d at 912. These three factors represent the interests of a defendant that the right to a speedy trial is intended to protect. *Id.* Of these three factors, courts regard the third, the possible impairment of the defense, as the most serious and important. *Id.* "The inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (internal quotations omitted). Claims of prejudice must

be actual or apparent on the record, or by reasonable inference, while speculative or possible prejudice is not sufficient. *Drudge*, 296 S.W.3d at 43. Failure to present evidence of actual prejudice weighs heavily in favor of the State. *Id.*

Greenlee argues his case was prejudiced by the failure to provide for a speedy trial because during his incarceration he was cold and was unable to sleep due to inadequate cover, he became deeply depressed, he was badly beaten by another inmate to the point of needing medical care, and he became fearful that he was going to be killed by the inmate. Greenlee also alleged that his defense was impaired when he learned that both of Victim's examining physicians, who were to be subpoenaed by the defense, were no longer available, having left the hospital which was their last known address, causing the subpoenas to be returned. While Greenlee makes general allegations of prejudice, he fails to meet his burden of demonstrating that actual, not speculative or possible, prejudice occurred due to the delay in his trial.

With regard to his mental state while incarcerated, anxiety alone does not establish prejudice absent the showing of specific instances that weighed heavily on the defendant. *State v. Joos*, 966 S.W.2d 349, 353 (Mo.App. S.D.1998). Aside from Greenlee's allegations contained in his brief, the record reveals no evidence of inordinate anxiety by Greenlee. We see no evidence in the record supporting Greenlee's claims that he was beaten in jail, suffered anxiety or depression in jail, or that his pre-trial incarceration was otherwise oppressive. Even if Greenlee's claims regarding anxiety and jailhouse incidents are true, they are outweighed by the lack of impairment to Greenlee's defense.

Greenlee further claims his defense was prejudiced by the unavailability of two of Victim's examining physicians to testify as witnesses. We find this argument is similarly unpersuasive. Greenlee does not indicate at what point the witnesses became unavailable—prior to the first trial or the second—or how long the witnesses had been unavailable. Greenlee further fails to demonstrate whether the delay in his trial contributed to the unavailability of the two witnesses. In addition to not providing information regarding the timing of the unavailability of the physicians, Greenlee failed to demonstrate what testimony the physicians would have provided that would have aided his defense. In fact, the record reveals that Greenlee introduced testimony at trial from one of Victim's examining physicians, Dr. Doug Kennedy, who performed Victim's SAFE (sexual abuse forensic examination) examination. While it is unclear about what the two allegedly unavailable doctors would have testified, prejudice does not necessarily result from the unavailability of a witness whose testimony is simply cumulative of testimony presented at trial. *Joos*, 966 S.W.2d at 353.

Finally, while Greenlee did spend an extended period of time incarcerated before his trial, we note that he was sentenced to life imprisonment as a result of his conviction. Thus, Greenlee has no claim that he has served additional jail time because of any delay in bringing him to trial. *See id.* Greenlee has failed to present evidence of prejudice by asserting or demonstrating impairment of his defense, thus this factor is weighed heavily in the State's favor and against the defendant. *See Drudge*, 296 S.W.3d at 43.

Considering the weight given to each of the four factors, we find the factors weigh in favor of the State and find there was no violation of Greenlee's right to a speedy trial. Greenlee's second point is denied.

*Point 3. Motion to Compel.*

In his third point on appeal, Greenlee claims the trial court erred in refusing to compel the State to allow his expert, Diana Blackwell (Blackwell), to interview Victim and Mother, view Victim's taped testimony, read Mother's deposition, or review the examining doctor's statements and medical records. Greenlee alleges this ruling was an abuse of discretion because it denied him an opportunity to rebut the State's expert witness in that: (1) the information was necessary for his expert to form an expert opinion, (2) the evidence offered by the State's interviewing witness is expert testimony, (3) the testimony is not understandable to a layman without expert testimony, and (4) the State was afforded the opportunity to use its experts to give such testimony and thereby bolster Victim and Mother's testimony.

In this Point on Appeal, Greenlee argues the trial court erred when it refused to compel the State to take several actions. However, the argument section of Greenlee's brief deals exclusively with the admissibility of Blackwell's testimony as an expert witness. In the argument section of his brief, Greenlee discusses the law regarding the admissibility of expert testimony and argues the trial court erred in excluding a portion of Blackwell's testimony. Greenlee's argument is not relevant to whether the trial court erred in failing to compel the State to undertake the actions described in Greenlee's third point on appeal. In fact, Greenlee fails to address the motion to compel at all in his argument of this point.

Arguments raised in the points relied on but not addressed in the argument are abandoned. *State v. Neher,* 213 S.W.3d 44, 49 n. 5 (Mo. banc 2007); *see also State v. Edwards,* 280 S.W.3d 184, 190 (Mo.App. E.D.2009) ("Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." (internal citations omitted)).

Greenlee has failed to adequately brief this point on appeal. His argument section recites law and argument for issues and topics wholly unrelated to his third point on appeal. We find that Greenlee has abandoned this argument, and decline to review this point on appeal.

*Point 4. Cross–Examination of Mother Regarding Past Sexual Abuse.*

In his fourth point on appeal, Greenlee claims the trial court erred in sustaining the State's motion in limine. Greenlee alleges this ruling prevented him from cross-examining Mother regarding her own past sexual abuse. Greenlee further argues the ruling prevented him from presenting expert testimony from Blackwell that would have shown that the testimony of Mother was strikingly similar to the testimony of other victims of sexual abuse who have suffered a "flashback" event and that women who are sexually abused as children: (1) more frequently report sexual abuse of their children, (2) are more prone to misinterpret innocent acts as sexual abuse, and (3) may suffer from post-traumatic stress disorder themselves and have a "flashback" episode where they actually relive their own sexual abuse and confuse it with their past abuse.

Upon reviewing the docket sheets and Greenlee's argument, it appears the State filed both a motion in limine and a "general" motion in limine prior to Greenlee's first trial. However, even though Greenlee is claiming the trial court erred in granting these motions, Greenlee has not included these motions in the record on appeal. This failure prevents this Court

from reviewing the veracity of the trial court's rulings with regard to these motions.

▬▬▬ "It is [a defendant's] duty to furnish this court with a sufficient record on appeal containing the proceedings and evidence necessary to the determination of all questions to be presented to this court for decision." *State v. Bescher*, 247 S.W.3d 135, 140 (Mo.App. S.D.2008) (internal quotations omitted); *see also* Missouri Rule 34.04 ("The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision."). "Failure to provide a sufficient record to permit determination of the issues requires that the point be denied." *Bescher*, 247 S.W.3d at 140; *see also State v. Keeth*, 203 S.W.3d 718, 722 (Mo.App. S.D.2006).

▬▬▬ Because Greenlee appeals from the trial court's ruling granting the State's motions in limine, but fails to present a record of the State's motions in limine, this Court cannot assign any error to the trial court's ruling. It is unclear from the record, even after reviewing the transcript of the pre-trial motion hearing, exactly what evidence the trial court excluded by granting the State's motions in limine. Without a clear understanding of what evidence was excluded by these motions, we are unable to examine whether the trial court erred in granting these motions.

Greenlee's fourth point is denied.

*Point 5. Cross–Examination of Mother Regarding Use of Internet.*

In his fifth point on appeal, Greenlee argues the trial court erred in sustaining the State's motion in limine regarding cross-examination of Mother regarding her use of the internet to seek male compan-

ionship. Greenlee claims not allowing this information prevented him from presenting all defenses available to him.

As addressed in the discussion of Greenlee's fourth point on appeal, Greenlee has failed to provide this court with a record of the State's motions in limine. Without these motions, this Court cannot determine what evidence the trial court restricted Greenlee from introducing and cannot adequately address this point on appeal. *See Bescher*, 247 S.W.3d at 140.

Greenlee's fifth point is denied.

*Point 6. Coercion of Jury.*

Greenlee claims in his sixth point on appeal that the trial court erred in compressing a two-day jury trial into one day. Greenlee asserts that by doing so, the trial court improperly coerced the jury into returning a guilty verdict. Greenlee posits that the trial court's actions amounted to an improper limitation on the jurors' ability to deliberate the case and was a tacit "hammer" instruction because the jurors were hungry and wanted to eat. Greenlee further claims the trial court, on more than one occasion, informed the jury that they were going to have to "work hard" to get the case finished in one day, and would have to "push pretty hard" to get the case concluded.

▬▬▬ The record supports Greenlee's claims that the trial court sought to conclude the trial within one day and that the trial court commented to the jury on the need to work hard in order to meet that goal. While Greenlee alleges that the trial court's actions in this regard were akin to giving the jury a tacit "hammer" instruction, Greenlee presents no evidence that he objected to any of these actions. There is no indication Greenlee objected to the trial court's scheduling of his trial for one day, no indication that he objected at

the trial court's comments that Greenlee now characterizes as a tacit "hammer" instruction, and no evidence that he objected when the trial court made comments regarding the desire to conclude the trial in one day. As such Greenlee has failed to preserve this point for appellate review. While the question of whether a verdict is coerced is one that may be considered on a request for plain error review, Greenlee has made no such request. *See State v. Saunders,* 318 S.W.3d 745, 748 (Mo.App. W.D.2010). However, because coercion of a verdict is a matter affecting substantial rights and would ordinarily involve issues of manifest injustice or miscarriage of justice, we review *ex gratia* Greenlee's claim for plain error. *See id.*

> To show plain error, an appellant must demonstrate that the trial court's error so substantially violated his rights that manifest injustice or miscarriage of justice would result if the error were left uncorrected. If the error did not have a decisive effect on the jury's verdict, there has been no plain error. Before conducting plain error review, a reviewing court must first determine whether the trial court's actions would amount to manifest injustice, assuming the court's action was erroneous. If not, then plain error review is inappropriate.

*State v. Comte,* 141 S.W.3d 89, 94 (Mo.App. S.D.2004).

 Coercion of a guilty verdict constitutes error. A reversal is required if it is conceivable that a challenged instruction coerced the jury into returning a verdict, and nothing in the record is available to find otherwise. *State v. Burns,* 808 S.W.2d 1, 3 (Mo.App. E.D.1991). "An oral comment made by the trial court during deliberations can be considered an instruction." *State v. Evans,* 122 S.W.3d 731, 734 (Mo.App. S.D.2003). "A verdict can only be considered coerced when it appears,

under the totality of the circumstances, that the trial court was virtually mandating that a verdict be reached, and by implication, it would hold the jury until such occurrence." *Id.* The trial court's actions here, by any reasonable analysis do not amount to a virtual mandate that a verdict be reached.

The record reveals that Greenlee's first trial was set for, and concluded, in one day. After the first trial resulted in a mistrial, Greenlee's second trial was scheduled for March 11 and 12, 2009. However, due to a conflict with the trial court's schedule the trial was rescheduled for August 27, 2009. While Greenlee claims the trial court erred in scheduling the trial for only one day, he presents nothing in the legal file to indicate his request for a two-day trial or his objection to the one-day trial setting. In the appendix, Greenlee attaches a letter from his trial counsel setting forth trial counsel's available dates for a two-day trial. Notably, the letter does not mention why the trial was rescheduled for only one day, nor does the letter contain an objection to the one-day trial setting. Greenlee's bare allegation that the trial court erred in setting the trial for one day instead of two, without more, does not display the required manifest injustice or miscarriage of justice to support a claim of plain error.

Greenlee also alleges that the trial court "on more than one occasion informed the jury that they were going to 'have to work hard' to get the case finished in one day, and would have to 'push pretty hard' to get the case concluded." Greenlee further claims that the trial court "refused" to order pizza for the jury for dinner, even after one of the jurors said he would pay for it. However, Greenlee fails to provide cites to the trial transcript where these statements were allegedly made. While Greenlee discusses these issues at a post-

trial motion for new trial and sentencing proceedings, he makes no reference to the transcript of the trial where these alleged errors occurred. Without direction as to when these statements were made, or the full context in which they were made, we will not evaluate the appropriateness of the trial court's alleged erroneous comments. Greenlee has failed to provide this Court with an ability to review these allegations.

Moreover, Greenlee has presented no evidence from which this Court could find that the jury considered the trial court's pre-deliberation comments as an instruction or mandate to the jury that it had to render a verdict. Even were we to question whether scheduling this case for a one day trial was the best way to proceed, we nevertheless defer to the trial court's judgment on that matter and will not interfere with the trial court's decision absent evidence of coercion. Greenlee has not alleged, much less demonstrated, that the trial court stated or implied that the jury would not be released until it returned a verdict, that it must reach a verdict by a certain time, or that it was required to reach a verdict, all acts which are deemed coercive. *See Smith v. State*, 276 S.W.3d 314, 318–19 (Mo.App. E.D.2008).

From the evidence presented in the record, we find no manifest injustice or miscarriage of justice resulted from either the trial court's comments or conducting Greenlee's trial in one day.

Greenlee's sixth point is denied.

*Point 7. Sufficiency of Evidence.*

In his seventh point, Greenlee asserts the trial court erred in overruling his motion for directed verdict and motion for judgment of acquittal at the close of the State's case and at the close of all evidence. Greenlee claims there was insufficient proof as to each element of first-degree statutory sodomy because: (1) there was no evidence of any sexual gratification or arousal by either the physical evidence or testimony, (2) there was no credible evidence that Greenlee's hand or finger made any contact with Victim's genitals since the vaginal DNA sample was void of male DNA, (3) Victim testified clearly that she did not tell Mother or anyone else of the sexual touching, and (4) Mother testified that she did not really know what was going on and that she asked Victim what happened because she was told to do so by her boyfriend.

We review the denial of a motion for acquittal to determine if the State presented sufficient evidence to make a submissible case. *State v. Willis*, 239 S.W.3d 198, 199 (Mo.App. S.D.2007). "Appellate review of a challenge to the sufficiency of evidence supporting a criminal conviction is limited to a determination of whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt." *State v. Page*, 309 S.W.3d 368, 374–75 (Mo.App. E.D.2010). "In applying this standard of review, we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inference to the contrary." *Id.* at 375. It is not this Court's role to weigh the evidence or judge the witnesses' credibility. *State v. Messer*, 207 S.W.3d 671, 674 (Mo.App. S.D.2006).

When considering the sufficiency of the evidence to support a conviction, there must be sufficient evidence of each element of the offense. *Id.* Greenlee was convicted of first-degree statutory sodomy, defined pursuant to Section 566.062.1 as "deviate sexual intercourse with another person who is less than fourteen years

old." Section 566.010 further defines "deviate sexual intercourse" as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person ... for the purpose of arousing or gratifying the sexual desire of any person." Greenlee alleges several deficiencies in the case against him, claiming the evidence presented at trial was insufficient to prove several essential elements of first-degree statutory sodomy.

### A. Arousing or Gratifying Sexual Desire

First, Greenlee alleges there was no evidence, through either physical evidence or testimony, to indicate any acts were done "for the purpose of arousing or gratifying the sexual desire of any person."

The language "for the purpose of arousing or gratifying the sexual desire of any person" is intended to exclude innocent contacts from being deemed criminal conduct. *State v. Gaines*, 316 S.W.3d 440, 456 (Mo.App. W.D.2010). In assessing this intent, the fact-finder considers the circumstances of the particular case. *Id.*; *Willis*, 239 S.W.3d at 201 ("In assessing whether a touching is for the purpose of arousing or gratifying sexual desire rather than being an innocent touching, a fact-finder looks at the circumstances of the particular case"). The defendant's purpose is determined from his mental state. *Id.* However, when examining a defendant's mental state, direct evidence is rarely available, instead intent is most often proven by circumstantial evidence. *Willis*, 239 S.W.3d at 201; *State v. McIntyre*, 63 S.W.3d 312, 315 (Mo.App. W.D.2001). "Intent may be inferred from surrounding facts or the act itself." *McIntyre*, 63 S.W.3d at 315. Furthermore, this Court does not determine the credibility of witnesses, but defers to the trial court's superior position from which to determine the credibility of witnesses. *Id.*

The State adduced evidence from a number of witnesses at trial regarding the incident. Mother testified that when she awoke in the early morning hours to get her infant a bottle, she walked down the hallway where she was able to see into the living room area. In the living room, Mother observed Greenlee standing over Victim, who was on the couch. Mother then observed Greenlee with his hand in Victim's underwear. Mother testified that she witnessed Greenlee remove his hand from Victim's underwear, move his hand toward his face, lick his finger, and put his hand back in Victim's underwear.

The State also presented testimony from Victim and Nancy Weiss (Weiss), a children's service worker for the Children's Division. Victim testified that Greenlee "touched me in the bad spot." Weiss testified that she interviewed Victim who told her that Greenlee "touched my pee-pee." Weiss further testified that Victim told her that Greenlee "got his thumb wet," and "got my pee-pee wet."

DNA evidence was also taken from Victim's underwear, which demonstrated the presence of male DNA. This male DNA was further tested and was consistent with Greenlee's profile, though the testing done on the male DNA was not able to demonstrate that Greenlee was the only possible source of the male DNA.

Accepting as true all evidence and inferences that support the verdict and disregarding all those to the contrary, this Court finds that the evidence in this case is sufficient to support a finding by the jury that Greenlee acted "for the purpose of arousing or gratifying the sexual desire of any person." Greenlee's conduct indicates his intent was not innocent. The sexual nature of the act itself, involving touching under the underwear of Victim and licking his finger, along with the fact

that Greenlee was alone with Victim in the middle of the night, provide a sufficient basis for the jury to infer that the contact was done for the purpose of arousing or gratifying Greenlee's sexual desire. We cannot substitute our judgment for that of the jury as the jury was free to rely on the circumstantial evidence of Greenlee's motive in finding him guilty of first-degree statutory sodomy. *See Messer*, 207 S.W.3d at 674.

### B. Contact with Victim's Genitals

█ Second, Greenlee claims the State did not present sufficient evidence of contact between his hand or finger with Victim's genitals. Greenlee claims it was it was physically impossible for a person to make the movements as testified by Mother and that there was no male DNA on Victim's vaginal DNA sample.

█ "When a defendant challenges the sufficiency of the evidence to support a finding that sexual contact occurred, the issue is whether there is at least a reasonable inference that there was the touching of the genitals." *Willis*, 239 S.W.3d at 200 (internal quotations omitted).

Accepting as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregarding all evidence and inferences to the contrary, sufficient evidence was presented at trial that Greenlee touched Victim's genitals. *See Page*, 309 S.W.3d at 374–75. As mentioned previously, Mother testified that she witnessed Greenlee remove his hand from Victim's underwear, move his hand toward his face, lick his finger, and put his hand back in Victim's underwear. Victim also specifically testified that Greenlee "touched me in the bad spot," and that her "bad spot" is her "private parts." Weiss also testified that Victim told her that Greenlee "touched my pee-pee," "got his thumb wet," and "got my pee-pee wet." While Victim did not use the anatomically correct name for her genital area, when a child is the victim of a sexual crime, the name by which the victim identifies body parts is a collateral matter. *Willis*, 239 S.W.3d at 200.

While Greenlee attempts to argue the lack of male DNA on Victim's vaginal DNA sample, male DNA was found on Victim's underwear, consistent with Greenlee's profile.

Greenlee's argument fails because it addresses the weight of the evidence, rather than its sufficiency. The evidence introduced at trial was sufficient for a jury to reasonably conclude that Greenlee touched Victim's genitals with his hand or finger.

### C. Victim's Discussions with Others

Third, Greenlee argues that because Victim testified that she was asleep on the couch and that she "didn't tell anyone anything," it must follow that Victim's memory of the incident must have come from her mother, and therefore, Victim's testimony was not credible.

Again, Greenlee argues the weight of the evidence presented at trial and not its sufficiency. Certainly Greenlee was able to argue at trial any inconsistencies in the Victim's testimony. However, in accepting as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregarding all evidence and inferences to the contrary, this Court does not weigh the evidence or judge the witnesses' credibility. *See Messer*, 207 S.W.3d at 674. Victim specifically testified that "[Greenlee] touched me in the bad spot." The jury was free to accept or reject this evidence. Accepting this evidence and all other evidence presented at trial, and all favorable inferences from the evidence, and disregarding all evidence and inferences to the contrary, we hold

that sufficient evidence was presented at trial from which a juror could find Greenlee touched Victim's vaginal area.

### D. Mother's Testimony

Fourth, Greenlee argues that Mother testified that she did not really know what was going on and that she only asked Victim what happened because she was told to do so by her boyfriend. Not only does Greenlee again argue the weight of the evidence rather than its sufficiency, but he fails to develop this argument in any manner. This section of Greenlee's brief contains three sentences of conclusory statements, devoid of evidence or argument.

Finding sufficient evidence exists in the record from which a reasonable juror could have found Greenlee guilty of the essential elements of first-degree statutory sodomy beyond a reasonable doubt, we deny Greenlee's seventh point on appeal.

### Point 8. Lesser Included Offense Instruction.

In his eighth point, Greenlee argues that the trial court erred in refusing to submit an instruction to the jury on the lesser-included offense of first-degree sexual misconduct. Greenlee claims that a criminal defendant is entitled to an instruction on any theory that the evidence tends to establish and as such, he was entitled to an instruction on first-degree sexual misconduct. Greenlee asserts that ample evidence existed to support each and every element of first-degree sexual misconduct as a lesser included offense, and that there existed a basis in the evidence for acquitting him of first-degree child molestation and first-degree statutory sodomy.

At trial, the jury was instructed on both first-degree statutory sodomy and the lesser-included first-degree child molestation. The first-degree statutory sodomy instruc-

tion required the jury to find Greenlee guilty if it found beyond a reasonable doubt that: (1) Greenlee touched Victim's genitals with his hand, (2) the conduct constituted deviate sexual intercourse, and (3) Victim was less than twelve years old.

Greenlee submitted proposed Instruction A on first-degree sexual misconduct, which the trial court declined to give. Proposed Instruction A provided that if the jury did not find Greenlee guilty of first-degree statutory sodomy or first-degree child molestation, then it must consider whether Greenlee was guilty of first-degree sexual misconduct. To convict Greenlee of first-degree sexual misconduct under Proposed Instruction A, the jury had to find beyond a reasonable doubt that Greenlee: (1) touched Victim's genitals through the clothing, (2) did so for the purpose of arousing his own sexual desire, and (3) did so without Victim's consent.

In determining whether the trial court erred in not giving an instruction on a less-included offense, there are two questions to be answered: (1) was the offense a lesser-included offense, and (2) was the evidence such that it was error not to give the instruction. *State v. Brown,* 58 S.W.3d 649, 655 (Mo.App. S.D.2001).

"A lesser-included offense is an offense established by proof of the same or less than all the facts required to establish the commission of the charged offense." *State v. Whiteley,* 184 S.W.3d 620, 623 (Mo.App. S.D.2006). "An offense is a lesser-included offense if it is impossible to commit the charged offense without necessarily committing the lesser." *Id.* "If the greater of the two offenses includes all the legal and factual elements of the lesser, then the lesser is an included offense." *Id.* However, if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the

lesser is not necessarily included in the greater. *Brown*, 58 S.W.3d at 655.

■ Regardless, a trial court is not required to instruct on a lesser-included offense unless there is some basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser-included offense. *Id.*

■ Here, Greenlee's proposed Instruction for first-degree sexual misconduct required that the jury find beyond a reasonable doubt that Greenlee touched Victim's genitals through her clothing, for the purpose of arousing his own sexual desire, and *without the consent of Victim*. Section 566.090 states that, "A person commits the crime of sexual misconduct in the first degree if such person purposely subjects another person to sexual contact without that person's consent." Unlike first-degree statutory sodomy, which pursuant to Section 566.062 required only that Greenlee engage in "deviate sexual intercourse with another person who is less than fourteen years old," lack of consent is a required element of the crime of sexual misconduct. Lack of consent is not an element required to convict on the charge of first-degree statutory sodomy. Therefore, sexual misconduct contains an element not required of statutory sodomy and thus cannot be deemed a lesser-included offense.

Greenlee's eighth point is denied.

*Point 9. Verdict Directing Instruction.*

■ In his ninth and final point, Greenlee argues the trial court erred in giving Instruction Number 5, the verdict directing instruction, because the instruction was unconstitutionally void for vagueness. Greenlee argues the instruction did not specifically describe the conduct that is proscribed with adequate specificity to inform an accused of what he is accused.

Greenlee argues that the instruction uses a definition of "deviate sexual intercourse" which contains multiple conjunctions with multiple acts, and does not specify which of the multiple acts must be "done for the purpose of arousing or gratifying the sexual desire of any person." We decline to review Greenlee's argument because he has failed to preserve this point for appeal.

■ When a defendant raises and properly preserves for appeal an argument alleging the constitutional invalidity of a Missouri statute, this Court lacks jurisdiction to hear the issue. *State v. Knifong*, 53 S.W.3d 188, 191 (Mo.App. W.D.2001). Instead, in such circumstances this Court is required to transfer the case to the Missouri Supreme Court for resolution of the constitutional issue. *Id.* at 191–92. However, we first must examine whether the constitutional question was properly preserved for appeal. *Id.* at 192. To preserve a constitutional issue for appeal, "it must be raised at the earliest time consistent with good pleading and orderly procedure." *Id.* (internal quotations omitted). To properly raise a constitutional issue, a party must:

> (1) raise the constitutional issue at the first available opportunity, (2) specifically designate the constitutional provision claimed to have been violated by express reference to the article and section of the constitution or by quoting the provision itself, (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*Id.* "If a party fails to properly preserve an argument that a statute is constitutionally invalid, the issue cannot be considered on appeal." *Id.* "Counsel must make specific objections to instructions or verdict forms before the jury retires in order to preserve them for appeal; the objections must also be raised in the motion for new trial."

**622**

*State v. Myers,* 989 S.W.2d 594, 596 (Mo. App. E.D.1999).

■ Greenlee's argument that Section 566.062, and the instruction based on that statute, MAICR 3d 320.11, is unconstitutionally vague was not presented in either of his written motions for acquittal nor was it otherwise presented to the trial court before the jury retired. *See Knifong,* 53 S.W.3d at 192; *Myers,* 989 S.W.2d at 596. Even in his motion for new trial, Greenlee failed to present a fully articulated claim that the statute was unconstitutionally vague as he did not identify which constitution (state or federal) was implicated or identify the specific constitutional provisions that were violated. Even had Greenlee properly articulated his objection in his motion for new trial, a "motion for new trial is too late to properly assert and preserve a claim that a statute is constitutionally invalid." *Knifong,* 53 S.W.3d at 192.

Greenlee has not preserved his constitutional attack on the validity of Section 566.062. As a result, although this Court retains jurisdiction over the case, we cannot transfer Greenlee's constitutional argument to the Missouri Supreme Court for resolution. *See id.*

Greenlee's ninth point on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROY L. RICHTER, C.J. and GARY M. GAERTNER, JR., J., Concur.