

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD77339** |
| | ) | |
| v. | ) | **OPINION FILED:  April 28, 2015** |
| | ) | |
| **JOSEPH A. BAX,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel R. Green, Judge

Before Division Two:  Lisa White Hardwick, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

Joseph Bax ("Bax") appeals from his conviction of the Class C felony of domestic assault in the second degree.  Bax argues that there was insufficient evidence to support the conclusion that he caused physical injury to his victim, and that the trial court committed plain error in submitting a verdict director that included a paragraph defining "attempt" when that term was not used in the instruction.  Because the jury's verdict of guilt is supported by sufficient evidence, and because the error in the verdict director did not result in a manifest injustice or miscarriage of justice, we affirm.

## Factual and Procedural Background[1]

Bax and A.M. were in a romantic relationship and lived together. A.M. obtained an order of protection against Bax on August 8, 2013. Notwithstanding the order of protection, A.M. gave Bax permission to come to her apartment on August 13, 2013. Bax and A.M. began arguing and a physical altercation ensued. At one point, Bax pinned A.M. on the bed and began choking A.M.

A.M. eventually escaped and was able to flag down a police car. Officer Paris Campbell ("Officer Campbell") was in the police car and spoke to A.M. A.M. told Officer Campbell that Bax had assaulted her. Officer Campbell observed red marks on A.M.'s neck consistent with choking.

Officer Jason Ambler ("Officer Ambler") responded to a radio dispatch regarding Bax's whereabouts. Officer Ambler located Bax at a McDonald's Restaurant and detained him. Officer Campbell arrived and advised Bax of his *Miranda*[2] rights. Bax agreed to speak with Officer Ambler. He told Officer Ambler that he had choked A.M., that she was pleading for help and for him to stop, and that he refused to do so. Bax also told Officer Ambler that although he did stop choking A.M. at some point, he could not explain why he stopped.

---

[1]We view the facts in the light most favorable to the jury's verdict. *State v. Jackson*, 410 S.W.3d 204, 209 n.3 (Mo. App. W.D. 2013).
[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Bax was charged by Information with the class C felony of domestic assault in the second degree pursuant to section 565.073[3] and with the class A misdemeanor of violation of an order of protection pursuant to sections 455.010, 455.050, and 455.085. Following jury trial, Bax was convicted of both counts. He was sentenced by the trial court to seven years in the Missouri Department of Corrections for domestic assault, and one year in the Cole County jail for violating the order of protection, with the sentences to run concurrently.

Bax filed this appeal.[4]

**Analysis**

Bax raises two points on appeal. First, he claims there was insufficient evidence to permit the jury to conclude beyond a reasonable doubt that he caused A.M. physical injury by choking her, an essential element of the crime of domestic assault in the second degree. Second, he contends that the trial court committed plain error by tendering a verdict director for domestic assault in the second degree that included a definition of "attempt" when the term "attempt" was not used in the instruction.

**Point One**

Bax claims the jury could not have found beyond a reasonable doubt that he caused A.M. physical injury by choking her, an essential element of the crime of domestic assault in the second degree. We disagree.

---

[3]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.
[4]Bax has not appealed from his conviction of the class A misdemeanor of violation of an order of protection pursuant to sections 455.010, 455.050, and 455.085.

On direct appeal from a criminal conviction, appellate review of the sufficiency of the evidence is limited to determining whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt. *State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011). We do not reweigh the evidence, but instead consider the evidence in the light most favorable to the verdict, affording the State the benefit of all reasonable inferences. *Id*. at 509.

Bax was charged with domestic assault in the second degree pursuant to section 565.073.1(1). That statute provides, in pertinent part:

> 1. A person commits the crime of domestic assault in the second degree if the act involves a family or household member . . . as defined in section 455.010, and he or she:
>
> (1) Attempts to cause or knowingly causes physical injury to such family or household member by any means, including but not limited to, . . . by choking . . . .

The State charged Bax with violating section 565.073.1(1) because he "knowingly caused physical injury to A.M. by choking her."[5]

"'Physical injury' means physical pain, illness, or any impairment of physical condition." Section 556.061(20). Bax contends on appeal that there was insufficient evidence that his act of choking A.M. caused physical injury. Bax's argument is belied by the record.

---

[5]There is no dispute in this case that Bax and A.M. were family or household members as contemplated by section 565.073.1.

4

A.M. testified during direct examination at Bax's trial as follows:

Q:      What happened after you were there in the kitchen?

A:      I think I was in the bathroom or -- no.  After I was in the kitchen, I finally got up and he tackled me on the bed and started choking me.

Q:      Were you trying to get him off or anything like that?

A:      Yes.  I was telling him to stop, please stop, over and over and over again.  [Tr. 111]

. . . .

Q:      Did you pass out?

A:      No, I didn't pass out.  As a matter of fact, I have terrors now.  And I think that's part of the reason why I'm -- I keep getting sick.  [Tr. 112]

. . . .

Q:      [A.M.], I will walk you through these and ask you to describe for us what it is we see in these photographs.  Specifically, Exhibit No. 1A, can you tell us what that is?

A:      That was just -- well, I guess they were taking a picture of my neck, the redness around my neck where he had choked me. . . . [Tr. 114]

. . . .

Q:      Okay.  And 1D?

A:      That was where he choked me.  [Tr. 114-15]

On cross-examination, A.M. testified as follows:

Q:      Right.  Did you ever go to the hospital?

A:      Yes, I did go to the hospital.  I wanted to get my neck checked and my back checked.  [Tr. 125]

. . . .

5

Q:      Right.

A:      And my -- I've got neck problems and back problems and it was killing me.  I mean, it was really hurting me because of the shock.

Q:      I understand.  But the marks on the neck, those were the marks that you said were left from the choking --

A:      Yeah.

Q:      -- right?

A:      Yep.

Q:      Those photos accurately depict that?

A:      Not accurately because a couple of days later, more bruises showed up.  [Tr. 125-26]

In addition to A.M.'s testimony, Officer Campbell testified that she observed "several red marks on [A.M.'s] neck which she previously explained she was choked so it was kind of indicative to that."  [Tr. 136]  Officer Campbell also identified photographs marked as Exhibits No. 1D and 1E as depicting "the injuries [she] saw specifically around [A.M.'s] neck."  [Tr. 136-37]  Officer Campbell testified that based on her training and experience she had seen injuries like those observed on A.M. before and that they reflected "fresh" bruising.  [Tr. 137]

The aforesaid testimony constitutes sufficient evidence from which the jury could have concluded beyond a reasonable doubt that Bax caused physical injury to A.M. by choking her.  Bax's first point on appeal is denied.

6

## Point Two

Bax argues that the trial court committed plain error in submitting Instruction No. 8 to the jury, the verdict director for domestic assault in the second degree, because the instruction, which was modeled after MAI-CR 3d 319.74, included an optional paragraph defining "attempt" when that term was not used in the instruction. Bax points out that he was not charged with attempting to cause physical injury to A.M. but instead with knowingly causing physical injury to A.M. Bax argues that this instructional error relieved the State of its burden to prove an essential element of the charged crime -- that he actually caused physical injury to A.M. We disagree.

Rule 28.02 governs the use of instructions and verdict forms in a criminal trial. Rule 28.02(c) requires the trial court to give the appropriate approved instructions or verdict form to the exclusion of any other instruction or verdict form. Failure to follow the MAI-CR form or applicable Notes on Use "shall constitute error, the error's prejudicial effect to be judicially determined." Rule 28.02(f). However, Rule 28.03 requires counsel to "make specific objections to instructions or verdict forms considered erroneous," and specifies that "[n]o party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict . . . ."

Bax acknowledges that he did not object to Instruction No. 8 at trial. Though Rule 28.03 requires instructional error to be raised at trial as a condition of claiming error on appeal, our Supreme Court has determined that plain error review remains available for unpreserved instructional error pursuant to Rule 30.20. *See, e.g., State v. Hunt,* 451

7

S.W.3d 251, 260 (Mo. banc 2014); *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012).

> Rule 30.20 provides that, whether the alleged errors are briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the error has resulted in manifest injustice or miscarriage of justice. In applying plain error review, this Court frequently uses a two-step inquiry. First, the Court must determine whether the claimed error is, in fact, "plain error[] affecting substantial rights." Rule 30.20. Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected. *Id.* An error is plain if it is "evident, obvious, and clear." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). In the realm of instructional error, plain error exists when it is clear that the trial court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted. *State v. Ousley*, 419 S.W.3d 65, 75 (Mo. banc 2013). Instructional error is plain error when it is apparent the error affected the verdict. *State v. Miller*, 372 S.W.3d 455, 470 (Mo. banc 2012).

*Hunt*, 451 S.W.3d at 260.

Though Instruction No. 8 erroneously included an optional paragraph addressing "attempt" when attempt to cause physical injury was neither charged nor instructed as an essential element in the verdict director, the error was not plain error. For reasons we explain, the error did not affect the verdict. *Id.* And the erroneous instruction did not so misdirect or fail to instruct the jury that a manifest injustice or miscarriage of justice resulted. *Id.*

Instruction No. 8 provided:

> As to Count One, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about August 15, 2013, in the County of Cole, State of Missouri, the defendant knowingly caused physical injury to [A.M.] by choking her,

8

Second, that [A.M.] and defendant were adults who were and had been in a continuing social relationship of a romantic or intimate nature,

then you will find the defendant guilty of domestic assault in the second degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

*A person attempts to cause physical injury when, for the purpose of causing that result, he does an act which is a substantial step toward causing that result. A substantial step is conduct which is strongly corroborative of the firmness of the person's purpose to cause that result.*

(Emphasis added.) Instruction No. 8 was modeled after MAI-CR 3d 319.74. The emphasized language, above, is an optional paragraph in the model instruction. The Notes on Use for MAI-CR 3d 319.74 plainly direct that the optional language defining "attempt" "must be used" when the term is used in the instruction. The Notes on Use also provide that "[i]f the term[] [is] not used, the optional paragraph[] defining the term[] should not be used."

The inclusion of a definition for "attempt" in Instruction No. 8 was error, and, thus, violated Rule 28.02. The error was plain, as it was evident, obvious, and clear. However, we are not persuaded that the error resulted in a manifest injustice or miscarriage of justice.

In addressing the jury's required findings pursuant to Instruction No. 8 during closing argument, the State made no reference to the definition of "attempt" and correctly

9

and clearly identified its burden to establish the essential element that Bax in fact knowingly caused physical injury to A.M. The State argued as follows during its closing:

> Now, with regard to those verdict directors, I want to direct your attention to Instruction No. 8. You will see that that is the verdict director for domestic assault in the second degree. And essentially there are two elements that the State needs to prove in order to prove domestic assault in the second degree. The first element that on or about August 15, 2013, the defendant knowingly caused physical injury by choking [A.M.]. And that's essentially what the first element is. And you've heard ample evidence today that the defendant went to [A.M.'s] house, he was drunk, he was intoxicated, that there was a problem. She tried to escape a couple of times. She tried to call for help. . . . They eventually end up in the bathroom with him on top of her choking her. That is that first element. . . . .
>
> And the icing on the cake that the defendant was choking [A.M.] is the fact that the defendant himself tells the police officer that he was choking her . . . .
>
> The other circumstantial evidence that we have, you see the photographs, the injury to her neck, the bruising area. Those of us who had bruises before, have slammed our knee up against the coffee table, we know that bruises looks [sic] reddish there the first couple hours and a couple of days later, as she testified, it bruised a lot further, along with the rest of her body. So we have that physical injury, and we have proof of that physical injury, the testimony, the pictures, the admission of the defendant, the observation of the neighbor. So element one is satisfied.

[Tr. 170-173] At no point did the State ever suggest that its burden would be satisfied by Bax's an "attempt" to cause A.M. physical injury by choking. Moreover, as we have already discussed in connection with Bax's first point on appeal, there was sufficient evidence to establish that Bax *in fact* caused A.M. physical injury when he choked her.

In his closing, Bax attempted to make light of the red marks on A.M.'s neck. He acknowledged the "little bitty red marks right here" (referring to one of the photographs in evidence). [Tr. 178] He acknowledged that A.M. characterized the red marks as the

10

injury she sustained. [Tr. 178] But Bax argued that he didn't "choke" A.M., as had he, "these marks on her neck, they would be red all the way around, but it's not. It's a little mark on the side." [Tr. 179] Bax never argued that A.M. suffered no physical injury. Rather, Bax argued that the red marks and the pain about which A.M. testified were caused by something other than being choked by Bax. Under these circumstances, we cannot find that the error in Instruction No. 8 misdirected the jury from its required obligation to find that Bax knowingly caused physical injury to A.M. by choking her.

This case is similar to *State v. Wheadon*, 779 S.W.2d 708 (Mo. App. E.D. 1989). There, a defendant was charged with assault in the first degree predicated on whether the defendant caused the victim an "actual protracted loss of use" of a part of the body. *Id*. at 711. The jury was given an instruction defining the word "attempt," though MAI-CR 3d 319.08 Notes on Use directed that the definition should not have been given. *Id*. at 712. The Eastern District observed that "[t]he rule is that definition of a term, word or phrase [should] not be given unless expressly required or permitted by the appropriate notes on use." *Id*. The court held that "[a]lthough the attempt definition conformed with MAI section 333.00, it was error for the court to give the instruction." *Id*. Nonetheless, "the giving of the instruction did not 'so misdirect the jury . . . . as to cause 'manifest injustice.'" *Id*. (quoting *State v. Murphy*, 592 S.W.2d 727, 733 (Mo. banc 1979)). The court thus found no plain error. *Id*. It is influential that in *Wheadon*, as in the instant case, the defendant had unsuccessfully argued on appeal that there was insufficient evidence to permit a jury to find that he *actually* caused protracted loss of use of a part of the body. *Id*. at 711.

11

Though the inclusion of a definition of "attempt" in a verdict director where the charged offense is predicated on establishing that a defendant actually caused injury is erroneous, we do not find on this record that the error resulted in a manifest injustice or miscarriage of justice. Bax's second point on appeal is denied.

## Conclusion

The trial court's judgment of conviction and sentence is affirmed.


_____
Cynthia L. Martin, Judge


All concur

12