

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110005 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Paula P. Bryant |
| WILLIE OLIVER, | ) | |
| | ) | |
| Appellant. | ) | Filed: October 4, 2022 |

Willie Oliver ("Defendant") appeals the trial court's judgment entered on a jury verdict finding him guilty of first-degree rape, second-degree domestic assault, and two counts of third-degree domestic assault. Defendant raises two points on appeal. In his first point on appeal, Defendant argues the trial court plainly erred by failing to give the correct jury instruction. In his second point on appeal, Defendant argues the trial court erred by failing to dismiss the charges against him because he was denied his right to a speedy trial.

Finding that trial court's instructions did not so misdirect the jury as to result in a miscarriage of justice, and that the delays are largely attributable to Defendant or circumstances that weigh neutrally, including the COVID-19 pandemic, we affirm.

## I.     Factual and Procedural Background

Defendant was arrested in September, 2017. On December 5, 2017, a grand jury indicted Defendant of the unclassified felony of rape in the first degree, the class B felony of kidnapping

in the first degree, the class D felony of domestic assault in the second degree, and two counts of the class E felony of domestic assault in the third degree. On August 25, 2021, nearly four years after his arrest, a jury found Defendant guilty of all counts except the class B felony of kidnapping in the first degree. The trial judge sentenced Defendant to ten years imprisonment for the first-degree rape as a prior offender, to run consecutive to concurrent terms of five years for second-degree domestic assault, and four years for each count of third-degree domestic assault.

The evidence at trial established that T.M. met Defendant in 2015, and they subsequently engaged in a sexual relationship.[1] T.M. and Defendant began living together a few months after their relationship began.

On the night of September 1, 2017, T.M. and Defendant were in their home together. Defendant accused T.M. of damaging or allowing someone else to damage his futon couch. Defendant became angry and started hitting T.M. Defendant demanded that T.M. undress. Defendant struck T.M. multiple times with his fist, his open hand, and his belt. Defendant subsequently pushed T.M. onto the futon and engaged in vaginal intercourse. To avoid repetition, additional facts directly relevant to Defendants' points are addressed in the Discussion section below.

## II.    Standard of Review

Defendant requests plain error review on both points. For his first point on appeal, Defendant acknowledges he did not preserve his claim of instructional error for review through an objection. In his second point on appeal, Defendant concedes his claim of error was not properly preserved because it was not raised in his motion for new trial.

This Court uses a two-step inquiry in applying plain error review. *State v. Hunt*, 451

---

[1] Pursuant to § 595.226.1, RSMo, we refer to the victim as "T.M." to protect her identity.

S.W.3d 251, 260 (Mo. banc 2014).  First, the court must determine whether the claimed error is a "plain error[] affecting substantial rights."  Rule 30.20.[2]  Plain error is error that is "evident, obvious, and clear."  *State v. DeRoy*, 623 S.W.3d 778, 789 (Mo. App. E.D. 2021) (quoting *State v. Darden*, 263 S.W.3d 760, 762-63 (Mo. App. W.D. 2008)).  "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected."  *Hunt*, 451 S.W.3d at 260 (citing Rule 30.20).  Second, the court must determine whether "the claimed error actually resulted in manifest injustice or miscarriage of justice."  *State v. Robinson*, 484 S.W.3d 862, 870 (Mo. App. E.D. 2016).  "Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice."  *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006).

Defendant additionally requests this Court review his second point *de novo*, relying on *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015).  This reliance is misplaced.  In *Sisco*, the defendant asserted the trial court erred in overruling his motion to dismiss for violations of his right to a speedy trial.  *Id.* at 304, 311.  In cases where the defendant has failed to preserve the speedy trial issue by failing to file a motion to dismiss or failing to include the speedy trial issue in a motion for new trial, and where the argument on appeal is that the trial court failed to *sua sponte* dismiss the charges, we have found plain error review appropriate.  *See, e.g.*, *State v. Jones*, 530 S.W.3d 525, 533 (Mo. App. E.D. 2017); and *State v. Drudge*, 296 S.W.3d 37, 42 (Mo. App. E.D. 2009).

### III.    Discussion

#### Point I

In his first point on appeal, Defendant argues the trial court plainly erred by failing to

---

[2] All rule references are to Missouri Supreme Court Rules (2021).

give the correct jury instruction.  In Instruction No. 12, the trial court instructed the jury prior to deliberation using language modeled after MAI-CR 4th 402.05 (2017).  The instruction, as given, stated:

> When you retire to your jury room, you will first select one of your number to act as your foreperson and to preside over your deliberations.
>
> You will then discuss the case with your fellow jurors.  Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.
>
> Your verdict, whether guilty or not guilty, must be agreed to by each juror.  Although the verdict must be unanimous, the verdict should be signed by your foreperson alone.
>
> When you have concluded your deliberations, you will complete the applicable form(s) to which you unanimously agree and return (it) (them) with all unused forms and the written instructions of the court.

A revised version of MAI-CR 4th 402.05 went into effect on January 1, 2021, prior to the trial in this case.  This revision stated:

> When you retire to your jury room, you will first select one of your number to act as your foreperson and to preside over your deliberations.
>
> You will then discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

*In deciding what the facts are, you must decide what testimony you believe and what testimony you do not believe. You may believe all, any part, or none of a witness's testimony. You must decide for yourselves whether to believe the testimony of any witness.*

*You must take great care in determining the believability of a witness and the weight to be given to testimony of the witness; you may take into consideration the witness's manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, prejudice, incentive, or motive the witness may have; the reasonableness of the witness's testimony considered in the light of all of the evidence in the case; any benefit that the witness was promised, received, or expected; and any other matter that has a tendency in reason to prove or disprove the truthfulness of testimony of the witness.*

Your verdict in this case should be based on unbiased reflection after fairly considering the evidence and the views of other jurors whose backgrounds and perspectives may be different from yours.

Your verdict, whether guilty or not guilty, must be agreed to by each juror. Although the verdict must be unanimous, the verdict should be signed by your foreperson alone.

When you have concluded your deliberations, you will complete the applicable form(s) to which you unanimously agree and return (it) (them) with all unused forms and the written instructions of the court.

(Emphasis added to denote language added in the 2021 revision).

Defendant did not object to the instruction as given and, after reviewing the proposed

instructions at the instructions conference, Defense counsel affirmatively stated that the instructions appeared to be correct.

*Analysis*

Rule 28.02 directs the trial court's use of instructions and verdict forms in criminal trials. *See also State v. Bax*, 459 S.W.3d 493, 496 (Mo. App. W.D. 2015). "Rule 28.02(c) requires the trial court to give the appropriate approved instructions or verdict form to the exclusion of any other instruction or verdict form." *Id.* When jury instructions have been revised, the appropriate jury instruction is that which is in effect at the time of trial. *See* Rule 28.01; *see also McCroskey v. Marshall*, 519 S.W.2d 717, 721 (Mo. App. 1975) ("In almost all cases where an MAI instruction has undergone revision, instruction preparers should conclude that the old form may no longer properly be used. To hold otherwise would be to ignore the revision itself."). Failure to use the proper MAI-CR instruction "shall constitute error, the error's prejudicial effect to be judicially determined...." Rule 28.02(f).

The trial court's giving of Instruction No. 12 was in error as it was not the approved instruction in effect at the time of the trial. However, Rule 28.02(f) continues, stating that failure to use the proper instruction shall constitute error, "provided that objection has been timely made pursuant to Rule 28.03." Rule 28.03 requires counsel to "make specific objections to instructions or verdict forms considered erroneous." Further, "[n]o party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict." Rule 28.03. Plain error review remains available for unpreserved instructional errors. Rule 30.20; *State v. Robinson*, 484 S.W.3d 862, 869 (Mo. App. E.D. 2016) (finding that Rule 28.03 does not trump Rule 30.20, allowing for appellate review for unpreserved claims of instructional error).

6

"Even when clear and obvious, instructional error seldom constitutes plain error." *Robinson*, 484 S.W.3d at 870 (citing *State v. Myles*, 479 S.W.3d 649, 655-56 (Mo. App. E.D. 2015)). We will only find plain error "when the claimed error actually resulted in manifest injustice or a miscarriage of justice." *Id.* Regarding alleged instructional error, manifest injustice or miscarriage of justice occurs "when the trial court has so misdirected or failed to instruct the jury that it is apparent the error affected (or, as some cases describe it, 'tainted') the verdict." *Id.* (citing *Myles*, 479 S.W.2d at 657-58). "In determining whether the misdirection likely affected the jury's verdict, an appellate court will be more inclined to reverse in cases where the erroneous instruction…excused the State from its burden of proof on a contested element of the crime." *State v. DeRoy*, 623 S.W.3d 778, 789 (Mo. App. E.D. 2021) (quoting *State v. Darden*, 263 S.W.3d 760, 762 (Mo. App. W.D. 2008)).

Though Instruction No. 12 erroneously omitted language from the current MAI-CR 4th 402.05 effective January 1, 2021,[3] we find that the court did not commit plain error because the erroneous instruction did not so misdirect or fail to instruct the jury causing a manifest injustice or miscarriage of justice.

The omitted language from Instruction No. 12, directing the jurors to consider the believability of witnesses and their testimony, is substantively similar to the language in Instruction No. 1, which is read at the beginning of the trial and given to the jury during their deliberations along with the other written instructions of the court. The omitted language provides:

> In deciding what the facts are, you must decide what testimony you believe and
> what testimony you do not believe. You may believe all, any part, or none of a

---

[3] *See McCroskey v. Marshall*, 519 S.W.2d 717, 721 (Mo. App. 1975) ("In almost all cases where an MAI instruction has undergone revision, instruction preparers should conclude that the old form may no longer properly be used. To hold otherwise would be to ignore the revision itself.").

witness's testimony.  You must decide for yourselves whether to believe the testimony of any witness.

You must take great care in determining the believability of a witness and the weight to be given to testimony of the witness; you may take into consideration the witness's manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, prejudice, incentive, or motive the witness may have; the reasonableness of the witness's testimony considered in the light of all of the evidence in the case; any benefit that the witness was promised; received; or expected; and any other matter that has a tendency in reason to prove or disprove the truthfulness of testimony of the witness.

MAI-CR 402.05 (2021).  Whereas the relevant language in Instruction No. 1 provides:

In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.  You may believe all, any part, or none of a witness's testimony.

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness's manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, prejudice, incentive, or motive the witness may have; the reasonableness of the witness's testimony considered in the light of all of the evidence in the case; any benefit that the witness was promised, received or expected; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the

8

testimony of the witness.

MAI-CR 402.01 (2021). Here, trial court did not affirmatively misstate the law in its instructions. *See, e.g.*, *State v. Neal*, 328 S.W.3d 374, 383 (Mo. App. W.D. 2010) (use of the incorrect instruction excused the State from its burden of proof, which warranted reversing and remanding for a new trial). Nor did the trial court fail to submit jury instructions entirely. *See, e.g.*, *State v. Robinson*, 484 S.W.3d 862, 870 (Mo. App. E.D. 2016) (trial court failed to submit jury instructions, including the jury's notetaking ability, which warranted reversing and remanding for a new trial). Instead, the trial court submitted a jury instruction once, when it should have been submitted twice. MAI-CR 4th 402.05 (1-1-21), Notes on Use 2 (directing trial courts to provide the witness evaluation instruction immediately preceding the jury retiring to deliberate); and MAI-CR 4th 402.01 (2021) Notes on Use 2 (directing trial courts to provide the witness evaluation instruction in the instructions given immediately following the jury being sworn in).

Our decision in *State v. Robinson* is distinguishable. 484 S.W.3d 862 (Mo. App. E.D. 2016). In *Robinson*, the trial court failed to read three mandatory jury instructions immediately after the jury was sworn in. *Id.* at 867. The three omitted jury instructions included the instruction explaining the order of the proceedings and occasional need for delay (MAI-CR 3d 300.06); the instruction distinguishing the duties of the judge and the jurors (MAI-CR 3d 302.01); and the instruction regarding juror notetaking (MAI-CR 3d 302.01). The trial court subsequently gave the similar instructions in "piecemeal" fashion in the form of reminder instructions, while some instructions were never provided. *Id.* at 874, 875 n.6.

In *Robinson*, we found the instructions given outside of their specified time frame insufficient to instruct the jury of its duty in examining the evidence. *Id.* at 874. The specific

9

instructions at issue "would be useless, unless given at the beginning of the trial." *Id.* at 871 (quoting *State v. Smith*, 154 S.W.3d 461, 471) (Mo. App. W.D. 2005)). Here, the instruction in question was omitted from the instructions provided immediately before the jury retired to deliberate, and instead was only provided at the beginning of the trial. In contrast to providing instructions regarding juror behavior at the end of trial, providing the evaluation of witness believability instruction at the beginning of the trial does not render its guidance useless. Although we recognize the intention that the witness evaluation instruction be given prior to evidence being adduced and again immediately preceding deliberations, the trial court's error in failing to provide the same instruction at the end of trial that was given at the beginning of trial did not so misdirect the jury as to result in a miscarriage of justice. In fact, all cases prior to January 2021 were similarly instructed.

Thus, because the language given to the jury in Instruction No. 1 was substantively identical to the language omitted from Instruction No. 12, the jury was instructed as to the substance of the language omitted from Instruction No. 12, and was not misled regarding its duty to evaluate the believability of witness testimony. Further, the jurors clearly understood their duty to evaluate the credibility of the witnesses because they found Defendant not guilty on the kidnapping charge, but guilty on the other charges. Under these circumstances, we cannot find that the error in Instruction No. 12 misdirected the jury from its required obligation to evaluate the believability of the witnesses.

Point I is denied.

Point II

In his second point on appeal, Defendant argues the trial court erred by failing to *sua sponte* dismiss the charges against him because he was denied his right to a speedy trial. The

10

record on appeal demonstrates Defendant was arrested in September 2017. Defendant's trial began on August 23, 2021. Overall, Defendant waited just shy of four years for his trial.

*Analysis*

This Court has recognized "[o]rderly expedition of a case, not mere speed, is the essential requirement behind a speedy trial." *State v. Wright*, 551 S.W.3d 608, 618 (Mo. App. E.D. 2018) (quoting *State v. Jones*, 530 S.W.3d 525, 533 (Mo. App. E.D. 2017)). To determine whether a defendant's constitutional right to a speedy trial has been violated, we must balance four factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 729 (Mo. banc 2007) (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972)).

Length of Delay

The first factor, length of delay, is a "triggering" factor. *State v. Howell*, 628 S.W.3d 750, 758 (Mo. App. E.D. 2021) (citing *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015)). "[U]ntil there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors." *Id.* (citing *Sisco*, 458 S.W.3d at 313). In Missouri, delays of more than eight months long are considered presumptively prejudicial. *Id.* (citing *Sisco*, 458 S.W.3d at 313). The delay is measured from the time of formal indictment or arrest until the trial begins. *Id.* We subtract delays attributable to the defendant from the total delay before considering this factor. *Id.* Delays counted against the defendant include delays "attributable to the defendant's continuances, motions, or other actions[.]" *Id.* (quoting *State v. Allen*, 954 S.W.2d 414, 417 (Mo. App. E.D. 1997)). Delays attributable to a defendant also "include any period the defendant lacked mental fitness to proceed." *Cummings v. State*, 535 S.W.3d 410, 418 (Mo. App. S.D. 2017).

11

Here, the record demonstrates Defendant waited almost four years from his initial arrest in September 2017 to his trial beginning on August 23, 2021. We then subtract any delays attributable to Defendant, such as the three joint continuances and the delays "[w]hile movant's competency to proceed was evaluated, treated, and restored." *See id.* at 420. Even subtracting these periods from the total, both parties concede that there was a delay of more than eight months, which is sufficient to find a presumptively prejudicial delay, thus triggering the rest of the analysis. After a delay is deemed presumptively prejudicial, we consider the second factor: the reasons for delay.

Reasons for Delay

In balancing the reasons for a delay, the Supreme Court has provided guidance:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531; *Sisco*, 458 S.W.3d at 313-14. "[D]elays attributable to the defendant weigh heavily against the defendant." *Sisco*, 458 S.W.3d at 314 (quoting *State v. Greenlee*, 327 S.W.3d 602, 612 (Mo. App. E.D. 2010)). This includes the period of time while the defendant's "competency to proceed was evaluated, treated, and restored." *Cummings*, 535 S.W.3d at 420 (finding that a delay of five years and four months to evaluate, treat, and restore competency to

12

proceed was attributable to the defendant and weighed heavily against him). On the other hand, joint continuances have a neutral effect on the analysis. *State v. Vickers*, 560 S.W.3d 3, 16-17 (Mo. App. W.D. 2018).

Although "neutral reasons" such as the regular functioning of the courts weighs lightly against the State, we find that delays attributable to the COVID-19 pandemic should generally not be weighed against either party.[4] Defendant argues that the pandemic-related delay should weigh lightly against the State because the State has the ultimate responsibility for bringing Defendant to trial, citing *Barker*'s directive that "more neutral reason[s for delay] such as negligence or overcrowded courts" should weigh against the State. 407 U.S. at 531. Additionally, Defendant argues that the Missouri Supreme Court created an exception to the COVID-19 suspension of in-person proceedings for "[p]roceedings necessary to protect the constitutional rights of criminal defendants." *Supreme Court of Missouri Order dated March 16, 2020, re: Response to the Coronavirus Disease (COVID-19) Pandemic*.[5] Rather, with this directive, the Supreme Court intended for the trial courts to weigh the constitutional rights of defendants and public health on a case-by-case basis. The Supreme Court's Operational Directive continues:

> The presiding judge of each circuit court and the chief judges of each appellate court are authorized to determine the manner in which the listed in-person exceptions are to be conducted. Any proceedings shall be limited to the attorneys, parties, witnesses, security officers, and other individuals necessary to the proceedings as determined by the judge presiding over the proceedings. The

---

[4] We recognize that there are instances where a delay caused by the COVID-19 pandemic would not weigh neutrally. For instance, *State v. Hines* demonstrates that a criminal defendant may request the trial proceed by using videoconferencing, thereby waiving their right to confront witnesses in-person. 648 S.W.3d 822, 833-34 (Mo. App. S.D. 2022).

[5] The March 16, 2020 Order is available in its entirety at https://www.courts.mo.gov/page.jsp?id=151973.

judge presiding over such proceedings has the discretion to excuse jurors or other individuals who cannot or should not appear as a result of risks associated with COVID-19.

*Id.* Further, the Order dated April 1, 2020, superseding the March orders, states: "This order allows in-person hearings in the listed proceedings [excepted from the suspension of in-person proceedings] but it does not mandate a judge set a hearing in any individual case." *Supreme Court of Missouri Order dated April 1, 2020, re: Response to the Coronavirus Disease (COVID-19) Pandemic*.[6]

This directive did not intend to mandate criminal defendants give up certain constitutional rights, such as the right to a jury trial and the right to confront witnesses against them, in order to conduct a speedy trial. When a criminal defendant, as here, does not waive their rights to a jury trial and to confront witnesses, the trial court may reasonably conclude that the trial would have to wait until an in-person jury trial setting was safe, especially when the criminal defendant does not assert their right to a speedy trial early and does not reassert that right during the COVID-19 shutdown. *See State v. Hines*, 648 S.W.3d 822, 833-34 (Mo. App. S.D. 2022) (finding that a criminal defendant was not prejudiced by an eight month delay between his arrest and trial when the trial was postponed due to COVID-19 restrictions and the defendant "did not object nor did he notify the trial court that his speedy trial request was a constitutional right that he wanted to remain protected, thereby acquiescing to the delay"). Further, other jurisdictions have found that delays related to the COVID-19 pandemic are generally not attributable to either party. *See United States v. Pair*, 522 F.Supp.3d 185, 194-95 (E.D. Va. 2021) (collecting cases). Therefore, we find that the delay attributable to the COVID-

---

[6] The April 1, 2020 Order is available in its entirety at https://www.courts.mo.gov/page.jsp?id=153953.

19 pandemic is a justifiable delay, not attributable to either party.[7]

Turning to the specific reasons for the delays in this case, we note Defendant was arrested on or about September 7, 2017. The Court originally set the cause on October 4, 2017 so that Defendant could seek representation. This delay of approximately 27 days is attributable to Defendant and weighs heavily against him. The case was continued to November 6, 2017, subject to the State's motion for continuance while the matter was pending in the Grand Jury. This 33-day delay is attributable to the State and weighs against the State, but not heavily, as it is a regular functioning of the courts and not a deliberate attempt to delay the trial. The State requested a second continuance while the matter was pending in the Grand Jury. This motion was granted and the cause was continued to December 11, 2017. This 35-day delay is also attributable to the State and weighs against the State, but not heavily. Defendant was arraigned on December 11, 2017 and the cause was given a trial setting on February 5, 2018. This 56-day delay is attributable to the regular functioning of the courts and weighs against the State, but not heavily. The Court continued the cause until March 19, 2018 because it was the first appearance in Division 16. This 42-day delay is attributable to the regular functioning of the courts and weighs against the State, but not heavily. The parties submitted a joint continuance to continue the case until May 14, 2018 to depose the complaining witness and because defense counsel would be unavailable. This 56-day delay is attributable to both parties and its effect is neutral to the analysis. On April 11, 2018, Defendant requested a § 552.020 Evaluation, which was granted on May 1, 2018. Between April 11, 2018 and May 23, 2019, the delay was attributable to Defendant's request to evaluate his competency to proceed and waiting for Defendant's

---

[7] It is important to note that even if the delay attributable to the COVID-19 shutdowns weighed against the State, it would not weigh heavily. Although the addition of the COVID-19 delay would cause the delays attributable to the State to be more numerous than the delays attributable to Defendant, because all the delays attributable to the State weigh lightly against the State and the delays attributable to Defendant weigh heavily against Defendant, this factor would still weigh in favor of the State.

15

competency to be restored. This 388-day delay is attributable to Defendant and weighs heavily against him. After the court granted Defendant's motion to proceed, the trial was set for July 8, 2019. This 46-day delay is attributable to the regular functioning of the courts and weighs against the State, but not heavily. The parties filed a second joint motion for continuance until August 26, 2019, because the case was just placed back on the docket. This 49-day delay is attributable to both parties and its effect is neutral to the analysis. The parties filed a third joint motion for continuance until September 30, 2019 to depose the complaining witness. This 35-day delay is attributable to both parties and its effect is neutral to the analysis. The case was transferred to another judge and ultimately rescheduled for jury trial to take place on April 2, 2020. This 185-day delay is attributable to the regular functioning of the courts and weighs against the State, but not heavily. Between April 2, 2020 and August 23, 2021, the cause was continued because a jury trial could not be conducted safely due to the COVID-19 pandemic. This delay was the product of the court acting *sua sponte* to continue the trial and the State requested a continuance. This 508-day delay is attributable to a nationwide health emergency outside of the State's control and is neutral in its effect to the analysis.

The length of delay was largely attributable to Defendant or reasons that weigh neutrally. The delays that weigh neutrally are the approximately 140 days for the joint continuances and approximately 508 days attributable to the COVID-19 pandemic, for a total of 648 days. The delays attributable to the Defendant weigh heavily against him. These delays include: (1) approximately 27 days after Defendant's arrest for Defendant to seek representation; and (2) approximately 388 days while Defendant's competency to proceed was evaluated, treated, and restored. Therefore, approximately 415 days of delay weigh heavily against Defendant.

In contrast, the delays attributable to the State do not weigh heavily against the State.

16

Defendant does not allege any attempt by the State to intentionally delay his trial or hamper his defense so as to require heavier weight in the balancing test. The delays attributable to the State are: (1) approximately 68 days after Defendant was arrested to receive a Grand Jury indictment; (2) approximately 98 days after arraignment to receive a trial setting; (3) approximately 46 days after Defendant was competent to proceed awaiting a trial setting; and (4) approximately 185 days while the case was transferred to another judge and awaiting trial setting. In sum, approximately 397 days of delay weigh against the State, but not heavily.

Overall, approximately 397 days of delay weigh against the State, but not heavily. Approximately 415 days of delay weigh heavily against Defendant. Finally, approximately 648 days weigh neutrally. Because the number of days attributable to Defendant is greater than the number of days attributable to the State, and because the delays attributable to Defendant weigh heavily against Defendant whereas the delays attributable to the State do not weigh heavily against the State, this factor weighs in favor of the State.

Defendant's Assertion of His Right

"There is no rigid requirement regarding when a defendant must assert his right to a speedy trial." *Sisco*, 458 S.W.3d at 316 (citing *Barker*, 407 U.S. at 527-28). In evaluating a defendant's assertion, courts weigh the timeliness of the assertion and the frequency and force of the defendant's objections. *Id.* This Court has recognized that a defendant's delay in filing a request for a speedy trial can weigh against him or her. *State v. Jones*, 530 S.W.3d 525, 533 (Mo. App. E.D. 2017) (citing *State v. Newman*, 256 S.W.3d 210, 216 (Mo. App. W.D. 2008)) (finding this factor weighed against the defendant when he delayed in filing his request for a speedy trial until nine months after his arrest). In *Sisco*, the Court found this factor to weigh in favor of the defendant when the defendant first asserted his right to speedy trial 20 months after

17

he was arrested, objected to the state's requested continuance, asserted his right to speedy trial multiple times thereafter, and filed a motion to dismiss based on the violation of his right to a speedy trial. 458 S.W.3d at 316-17. In *State ex rel. McKee v. Riley*, the Court found this factor to weigh in the defendant's favor when he filed his motion for a speedy trial three months following his arrest and filed repeated requests thereafter. 240 S.W.3d 720, 729 (Mo. banc 2007). Similarly, in *State v. Fisher*, the court found that this factor weighed in favor of the defendant when the defendant filed the motion 180 days after his arraignment, objected to the state's requested continuance, and moved to dismiss the charges based on a violation of his right to a speedy trial. 509 S.W.3d 747, 755 (Mo. App. W.D. 2016). The court found that "[b]ased on the length of [defendant]'s detainment (six years), his request for a speedy trial within the first year and a half constitutes a request early in the proceedings and reflects his desire for a speedy trial." *Id.*

These cases can be distinguished from the instant case. Here, Oliver asserted his right to a speedy trial on December 24, 2019, 28 months into his almost 48-month detainment. Unlike *Sisco* and *Fisher*, Defendant never objected to any of the State's requested continuances. In fact, most of the party-requested continuances were requested by joint motion. Further, unlike *Sisco* and *Riley*, Defendant made no repeated requests for a speedy trial. Finally, unlike *Sisco* and *Fisher*, Defendant's motion to dismiss was not based on his claim that he was denied his right to a speedy trial. Defendant made just one request for speedy trial that was not early in the proceeding. This singular, delayed request weighs against Defendant.

Prejudice to Defendant

Finally, "whether delay resulted in prejudice to the defendant is the most important factor." *Howell*, 628 S.W.3d at 759 (citing *State v. Bolden*, 558 S.W.3d 513, 522 (Mo. App.

18

E.D. 2016)). The defendant has the burden of demonstrating prejudice and "[c]laims of prejudice must be actual or apparent on the record, or by reasonable inference, while speculative or possible prejudice is not sufficient." *State v. Wright*, 551 S.W.3d 608, 620 (Mo. App. E.D. 2018) (quoting *State v. Greenlee*, 327 S.W.3d 602, 612-13 (Mo. App. E.D. 2010)) (internal quotation marks omitted). To determine whether a delay prejudiced a defendant, courts evaluate three concerns: "(1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired." *Sisco*, 458 S.W.3d at 317 (quoting *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 912 (Mo. banc 2010)). Courts view the impairment of the defense as the most serious. *Id.*

Here, Defendant asserts that his pretrial incarceration weighed heavily on him and heightened his anxiety, resulting in prejudice, because his two grandmothers and sister passed away while he was in jail. "Anxiety and concern exist in every criminal case, but that alone does not establish prejudice where…the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances." *Id.* at 317 (quoting *State v. Bolin*, 643 S.W.2d 806, 815 (Mo. banc 1983) (overruled on other grounds)). In *State v. Howell*, this Court found that a defendant's assertion that he suffered particularly heavy anxiety due to his grandfather's death and the jail staff's mistake in not allowing the defendant to attend the funeral was "not particularly heavy or more than the usual anxiety and concern felt by all incarcerated persons separated from their families." 628 S.W.3d at 759-60. Therefore, as in *Howell*, we find that this anxiety and concern during this delay did not rise to the level of prejudice. *See id.* at 760. Defendant also claims that he suffered prejudice because he was incarcerated, in close quarters, during the COVID-19 pandemic. Again, this situation is not particularized to Defendant and does not rise to the level of prejudice.

19

Defendant additionally asserts that he was prejudiced by the complaining witness's fading memory. In a review of the record, we do not find prejudice to Defendant. Here, any deficiencies in the witness's memory prejudiced the State's case because Defendant was able to argue that the complaining witness was unreliable because her statements were inconsistent.

Because we find Defendant was not prejudiced by the delay, this factor weighs against Defendant.

Weighing the Four *Barker* Factors

Three of the four *Barker* factors weigh against Defendant, including the most important factor—prejudice. The one factor in Defendant's favor is the length of the delay. Although the length of Defendant's delay is presumptively prejudicial, this presumption is overcome by the fact that the delays are largely either attributable to Defendant or circumstances that weigh neutrally. Furthermore, because Defendant's assertion of his right was belated and solitary, he was not prejudiced by the delay. For these reasons, Defendant's right to a speedy trial was not violated, and we further find that the circuit court did not plainly err in failing to *sua sponte* dismiss the action for violating Defendant's right to a speedy trial.

Point II is denied.

## IV.    Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

_____
Kelly C. Broniec, Presiding Judge


Philip M. Hess, J. and
James M. Dowd, J. concur.

20