

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110639 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| vs. | ) | 13SF-CR01545-01 |
| | ) | |
| MELVIN J. SCHERRER, | ) | Honorable Jerel L. Poor II |
| | ) | |
| Appellant. | ) | Filed:  August 29, 2023 |

Melvin J. Scherrer ("Defendant") appeals the judgment, following a jury trial, finding him guilty of murder in the second degree (Count I), armed criminal action (Count II), felonious restraint (Count III), and abandonment of a corpse (Count IV).  The trial court sentenced Defendant to consecutive terms of life imprisonment for Count I, fifteen years of imprisonment for Count II, seven years of imprisonment plus a $5,000 fine for Count III, and four years of imprisonment plus a $5,000 fine for Count IV.  We affirm.

## I.     BACKGROUND

On August 1, 2013, the State charged Defendant with multiple crimes for his involvement in an incident which resulted in Victim's death.  A jury trial subsequently took place on February 15-18, 2022, in the Circuit Court of St. Francois County ("trial court" or "court").

## A.    Relevant Evidence Adduced at Trial

Viewed in the light most favorable to the jury's verdicts, the following relevant evidence was adduced at Defendant's trial through the testimony of investigating officers and four eyewitnesses present during the course of events. On December 15, 2012, Defendant brought Victim to Defendant's house for a "tattoo party" that stretched over several days and was attended by multiple other people. People would drift in and out of the party, and some stayed up "[a]ll night" "drinking and doing drugs," including methamphetamine. Sometime during the evening of December 18, 2012, Defendant came to believe Victim had a gun and intended to "rob and kill" Defendant. Defendant struck Victim multiple times with a baseball bat and taped Victim's hands behind his back. After several hours of searching, nobody in the home was able to find a gun belonging to Victim. Defendant again struck Victim with a baseball bat, and a witness testified Defendant appeared "high on drugs."

Defendant and two associates ("associate one" and "associate two") then went outside, removed a large toolbox from the bed of a truck, and slid the toolbox inside the house. Defendant forced Victim into the toolbox while another associate ("associate three") stood nearby holding a gun. Once Victim was inside the toolbox, Defendant wrapped Victim's head with Gorilla Tape, covering his "whole head" such that "you couldn't see [any] flesh at all." Defendant pushed Victim down into the toolbox and closed the lid. Victim kicked the inside of the toolbox and made other noises for between ten and twenty minutes, but eventually all sounds coming from the toolbox stopped.

Associate one and associate two helped Defendant return the toolbox to the truck bed. Defendant and associate one then left in the truck with Victim's body in back, proceeding to drive around for approximately two hours until deciding where to dump the body. Eventually, Defendant stopped at a vacant house with several septic tanks, and associate one helped

2

Defendant tip the body from the toolbox into one of the septic tanks. Defendant later stopped again to put some of Victim's property into an old washing machine and burn it.

The following morning, Victim's wife, who knew Victim had been at Defendant's home, discovered multiple "angry," "erratic," and "desperate" text messages sent to her by Victim at some point during the previous night. After attempting to contact Victim multiple times and receiving no response, Victim's wife called Defendant, who told her Victim had "left in the middle of the night." Five days later, Victim's wife filed a missing persons report in St. Francois County and cooperated with police. Based on the subsequent investigation, police obtained a search warrant for Defendant's home.

During a search of Defendant's home on January 29, 2013, police seized multiple items including carpet fibers, carpet tacking, a baseball bat, and other items containing blood. Victim's body remained undiscovered until July 2013, when associate one led police to the location of the septic tank with the body still inside. The forensic pathologist who performed Victim's autopsy determined the death was a homicide and testified that Victim's nose and mouth were sufficiently covered to have asphyxiated him. A fiber on Victim's boot was found to be similar to Defendant's living room carpet. At trial, the State called an expert witness who testified that blood found on the carpet seized from Defendant's home was consistent with Victim's DNA. Additionally, police discovered Victim's tattoo equipment in Defendant's house.

## B.    Relevant Procedural Posture

After hearing the above evidence, a jury found Defendant guilty of murder in the second degree, armed criminal action, felonious restraint, and abandonment of a corpse. Defendant subsequently filed a motion for new trial asserting that, *inter alia*, the trial court erred in: (1) violating his right to a speedy trial; (2) denying his motion to suppress the physical evidence seized from Defendant's home and in admitting such evidence; and (3) admitting allegedly

3

prejudicial photographic evidence containing the logo of a motorcycle club. The trial court denied the motion for new trial and sentenced Defendant to consecutive terms of life imprisonment for murder in the second degree, fifteen years of imprisonment for armed criminal action, seven years of imprisonment plus a $5,000 fine for felonious restraint, and four years of imprisonment plus a $5,000 fine for abandonment of a corpse. This appeal followed.[1]

## II.    DISCUSSION

Defendant raises three points on appeal. In his first point, Defendant asserts he was denied his right to a speedy trial. In his second point, Defendant argues the trial court erred in denying his motion to suppress and in admitting incriminating evidence obtained during a search of his home. In his third and final point on appeal, Defendant claims the trial court erred in admitting photographic evidence alluding to his membership in a motorcycle club.

### A.    Defendant's First Point on Appeal

We initially address Defendant's argument in his first point on appeal asserting he was denied his constitutional right to a speedy trial. "[W]hile the trial court's factual findings are subject to deferential review, [an appellate] [c]ourt will review *de novo* whether [a defendant's] Sixth Amendment right to a speedy trial was violated." *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015).

#### 1.    General Law and Analysis

"The federal and Missouri constitutions provide equivalent protection for a defendant's right to a speedy trial." *Id*. (citation and internal quotations omitted). "Orderly expedition of a case, not mere speed, is the essential requirement behind a speedy trial." *State v. Greenlee*, 327 S.W.3d 602, 611 (Mo. App. E.D. 2010). A primary purpose of the right to a speedy trial is "to guard against inordinate delay between public charge and trial," and thus prevent prejudice to a

---

[1] To avoid unnecessary repetition, additional facts relevant to each of Defendant's points on appeal will be set forth in Sections II.A., II.B., and II.C. of this opinion.

meritorious defense or interference with a defendant's liberty. *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring). In determining whether a defendant's right to a speedy trial has been violated, courts must consider all of the relevant circumstances and balance four factors, (1) the length of the delay in bringing the defendant to trial; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) any prejudice suffered by the defendant as a result of the delay. *Sisco*, 458 S.W.3d at 313, 314 n.11; *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 911 (Mo. banc 2010); *see also Barker*, 407 U.S. at 530-33. We refer to these as the "*Barker* factors." *See State v. Smith*, 491 S.W.3d 286, 305 (Mo. App. E.D. 2016).

### a. The Length of Delay

The first factor, the length of the delay in bringing the defendant to trial, triggers the need to determine whether a defendant's right to a speedy trial has been violated, because unless there is a delay that is presumptively prejudicial, the appellate court need not consider the other three factors. *Garcia*, 316 S.W.3d at 911; *Smith*, 491 S.W.3d at 305. If the delay between the time of the defendant's indictment and his trial is eight months or more, such a delay is presumptively prejudicial. *See id*.

In this case, the delay of over eight years between the time the complaint was filed against Defendant on August 1, 2013, and the beginning of his trial on February 15, 2022, is presumptively prejudicial. *See id*. Therefore, this factor weighs in favor of Defendant, and we proceed to consider and balance the other three *Barker* factors. *Id*.

### b. The Reasons for Delay

In evaluating the second factor, the reasons for the delay in bringing the defendant to trial, we determine which delays are attributable to the State, which delays are caused by neutral and valid reasons, which delays are attributable to the defendant, and assign different weights to different reasons for the delay. *Id*.; *Sisco*, 458 S.W.3d at 313-14. A deliberate attempt by the

5

State to delay a defendant's trial in order to hamper the defense weighs heavily against the State. *Id*. Delays by the trial court for more neutral reasons, such as overcrowded dockets or negligence of the State, also weigh against the State, but less heavily. *Sisco*, 458 S.W.3d at 314. Other neutral delays caused by valid reasons, including the unavailability of witnesses, continuances requested jointly by the State and a defendant, and the COVID-19 pandemic, justify an appropriate delay and do not weigh against either party. *Id*. at 313-14; *State v. Oliver*, 655 S.W.3d 407, 418-20 (Mo. App. E.D. 2022); *Edwards v. State*, 636 S.W.3d 606, 612 (Mo. App. E.D. 2021). However, delays attributable to the defendant weigh heavily against him. *Sisco*, 458 S.W.3d at 314.

The record in this case is replete with delays that occurred for an assortment of reasons. On August 1, 2013, the State initially charged Defendant, and shortly thereafter on September 10, 2013, Defendant was arrested and taken into federal custody on separate drug and weapons charges. *State ex rel. Scherrer v. Martinez*, 479 S.W.3d 755, 756 (Mo. App. E.D. 2016). Defendant was ultimately found guilty of the federal charges and sentenced to thirty years of imprisonment, but he was not bound over to state court for trial on the charges at issue here until October 13, 2015. *Id*. at 756-57. This preliminary delay of well over two years occurred solely because of the separate federal proceedings against Defendant. We find this is a valid reason for delay and a neutral factor that does not weigh against either party. *See Edwards*, 636 S.W.3d at 612.

After Defendant was transferred from federal custody in October 2015, this case was initially set for trial on January 25-29, 2016. Defendant immediately requested two continuances in November 2015, both of which were initially denied by the trial court. In early January 2016, the trial court granted Defendant a continuance after this Court's ruling on a writ of prohibition. *See Scherrer*, 479 S.W.3d at 759. Defendant's case was not set for trial again until May 14-25,

6

2018, over two years later. During this two-year timeframe, the trial court held hearings and ruled on, *inter alia*, various motions filed by Defendant for vindictive prosecution, evidence disclosure, his return to federal custody, sanctions, discovery, testing, and Department of Corrections records. "[W]hile this Court does not deny [Defendant's] legal right to file these motions and have them adjudicated, the resulting delay is attributable to [Defendant]." *See Sisco*, 458 S.W.3d at 316. The case was also continued six times during those two years with the agreement of both parties, and these continuances do not weigh against either party. *Edwards*, 636 S.W.3d at 612.

As the May 14, 2018, trial date approached, the State began to request its first continuances. Defendant specifically protests about three continuances filed by the State that caused approximately five months of additional delay in bringing this case to trial. However, two of these continuances were justified by the unavailability of witnesses, and they therefore do not weigh against either party. *Id*. Accordingly, only one continuance noted by Defendant weighs slightly against the State, accounting for at most two months of delay in bringing this case to trial. *See Smith*, 491 S.W.3d at 305-06.

After granting the State's most recent continuance, the trial court set the case for a hearing on October 19, 2018, regarding Defendant's motion pertaining to a witness. At this hearing, the trial court again set the case for trial, this time for September 16-27, 2019. During this interim of eleven months, both a new prosecutor and a new judge were elected and added to this case. Despite these personnel changes, the court scheduled case reviews and hearings throughout 2019, and the trial remained on schedule for September.

On September 9, 2019, three days after filing a motion to dismiss for lack of a speedy trial, Defendant moved for a continuance. The trial court granted Defendant's motion, moving the trial to February 3-5, 2020. At a subsequent hearing, the trial court moved the trial date to

7

July 20-24, 2020, and the record shows no objections to this change by either party. On March 13, 2020, Defendant moved for an additional continuance, which the trial court granted by pushing the trial date to August 24-28, 2020. The above delays resulting from the two continuances requested by Defendant, totaling approximately six months, weigh heavily against him. *See Sisco*, 458 S.W.3d at 314-16. The additional six-month delay in between does not weigh against either party since no objections are apparent from the record. *See Edwards*, 636 S.W.3d at 612.

At a subsequent case review hearing, both parties again agreed to delay the trial and place the case on the docket for October 9, 2020, at which time the court rescheduled the trial for December 13-17, 2021. Although the record does not explicitly mention COVID-19, these delays occurred during the timeframe in which Missouri's governor declared a state of emergency due to the pandemic. *See Thiemann v. Parkway School District*, 655 S.W.3d 460, 464-65 (Mo. App. E.D. 2022) (outlining the dates of the state of emergency and noting that appellate courts may take judicial notice of "current history" and "facts commonly known to all mankind . . ."). We find the above delays totaling approximately fourteen months are neutral reasons for delay and therefore not attributable to either party. *Oliver*, 655 S.W.3d at 418-20.

Prior to the December 13, 2021, trial date, the State requested a final continuance which was granted by the trial court, pushing the trial to February 15-18, 2022. This three-month delay weighs slightly against the State. *See Smith*, 491 S.W.3d at 305-06. Defendant's trial finally began on February 15, 2022.

Most of the delays in this case occurred for valid reasons not attributable to either party, e.g., Defendant's arrest and conviction on federal charges, continuances agreed to by both parties, State-requested continuances justified by the unavailability of witnesses, and the COVID-19 pandemic. Defendant also contributed significantly to the delay by filing multiple

8

continuances of his own, and these requests weigh heavily against him. *Sisco*, 458 S.W.3d at 314. Delays caused by Defendant's motions filed with the trial court are also attributable to him. *Id.* at 316. Finally, the State's contributions to the delay were comparatively minor, accounting for a small fraction of the overall delay. Importantly, the continuances requested by the State weigh only slightly against the State because they occurred for neutral reasons and there is no allegation of bad faith in this case. Defendant does not allege, and our review of the record does not reveal, any indication the State deliberately attempted to delay Defendant's trial in order to hamper his defense.

Our conclusion as to this factor should not be read as condoning the delay that occurred in Defendant's case. However, on balance, we find the second *Barker* factor weighs in favor of the State because the delays in this case occurred primarily for neutral reasons and Defendant's contributions to the delay weigh heavily against him.

### c. Defendant's Assertion of His Right to a Speedy Trial

The third *Barker* factor looks at whether and how the defendant asserted his right to a speedy trial. *Smith*, 491 S.W.3d at 307. There is no rigid requirement as to when a defendant must assert his right to a speedy trial. *Id*. We ultimately consider the timeliness of the defendant's assertion of his right and the frequency and force of his objections. *Id*.

Defendant initially asserted his right to a speedy trial relatively early in the proceedings by filing a motion with the trial court on August 20, 2015. However, less than three months later, Defendant filed a motion to withdraw his speedy trial request. Defendant later filed a waiver of his speedy trial request in September 2016, and the trial court accepted this waiver. Defendant did not assert his right to a speedy trial again until June 6, 2018, when he filed another motion for speedy trial. He then asserted the right once more on September 6, 2019, in a motion to dismiss.

9

However, Defendant requested multiple continuances, which were granted by the trial court, *after* reasserting his right to a speedy trial. These continuances "contradict [Defendant's] present claim that his right to a speedy trial was violated." *State v. Summers*, 653 S.W.3d 155, 164-65 (Mo. App. W.D. 2022) (quoting *State v. Harris*, 673 S.W.2d 490, 494 (Mo. App. E.D. 1984)). Additionally, although Defendant asserted his right to a speedy trial relatively early in the proceedings, this initial assertion was successfully waived, and Defendant did not reassert his right until nearly five years after the initial charges were filed in this case. *See Hollings v. State*, 662 S.W.3d 821, 833 (Mo. App. E.D. 2023) (weighing a late assertion of the right to a speedy trial against the defendant). Based on the foregoing, we weigh this factor in favor of the State. *See id.*; *Summers*, 653 S.W.3d at 164-65; *Harris*, 673 S.W.2d at 494.

### d.  Any Prejudice Suffered by Defendant as a Result of the Delay

The fourth *Barker* factor, which is the most important in our analysis, considers any prejudice suffered by the defendant as a result of the delay in bringing him to trial. *Smith*, 491 S.W.3d at 307. In determining the prejudice resulting from the delay, we take into account three considerations, "(1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired." *Id.* (quoting *Sisco*, 458 S.W.3d at 317). The third consideration – limitation of the possibility that the defense will be impaired – is viewed as the most serious. *Id.* Moreover, a defendant must prove actual prejudice, as opposed to speculative or possible prejudice, occurred because of the delay in his trial. *Greenlee*, 327 S.W.3d at 612-13. Any alleged prejudice must be supported by facts in the record, and a defendant's failure to present evidence or at least reasonable inferences of actual prejudice weighs heavily in favor of the State. *Id.*

Defendant's brief on appeal alleges he "was prejudiced by the denial of his right to a speedy trial in that he was subjected to anxiety over the pending charges." Defendant also

10

alleges prejudice resulting from the appearance of an additional State witness and the fact that two State witnesses "changed [their] stor[ies] right up until the time of . . . trial."

The first consideration – prevention of oppressive pretrial incarceration – caused no prejudice here, because Defendant had already started serving a thirty-year sentence on separate federal charges during these proceedings. *See Scherrer*, 479 S.W.3d at 756. On August 1, 2013, the State charged Defendant in this case, and on September 10, 2013, Defendant was arrested and taken into federal custody. *Id*. Defendant was found guilty of federal drug and weapons charges on December 10, 2014, and sentenced to thirty years of imprisonment. *Id*. In other words, because Defendant was incarcerated on other charges and would have been incarcerated regardless of any delays in this matter, he cannot show oppressive pretrial incarceration. *State v. Young*, 582 S.W.3d 84, 95 (Mo. App. E.D. 2019).

As to the second consideration, Defendant alleges generalized anxiety over the pending charges, but fails to provide any specific evidence beyond a conclusory statement in his brief. "Undoubtedly, anxiety and concern exist in every criminal case, but that alone does not establish prejudice where, as here, the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances." *Sisco*, 458 S.W.3d at 317 (quoting *State v. Bolin*, 643 S.W.2d 806, 815 (Mo. banc 1983)) (superseded by statute on other grounds). Additionally, any anxiety suffered by Defendant awaiting trial in this case "is neither apparent nor reasonably inferable from the record itself," especially in light of his incarceration on separate federal charges. *Young*, 582 S.W.3d at 95.

Regarding the third and most serious consideration – limitation of the possibility that the defense will be impaired – the record does not show, nor does Defendant claim, that the delay significantly impaired his defense through, for example, the disappearance of witnesses or the loss of relevant evidence or testimony. *Greenlee*, 327 S.W.3d at 612-13; *see Barker*, 407 U.S. at

11

532.  Instead, Defendant suggests the delay impaired his defense by allowing the State to procure an additional witness and obtain additional testimony.  However, the State's ability to bolster its case does not equate to an impairment of Defendant's ability to adequately prepare his case. *Edwards*, 636 S.W.3d at 615; *see Barker*, 407 U.S. at 532.  Additionally, the fact that key State witnesses changed their testimony prior to trial arguably benefited Defendant by facilitating impeachment on cross-examination.

Defendant has failed to show any actual prejudice suffered as a result of the delay in bringing his case to trial. Accordingly, the fourth and final *Barker* factor weighs heavily in the State's favor.

### 2.      Conclusion as to Defendant's First Point on Appeal

In sum, the first *Barker* factor weighs in favor of Defendant.  There is no question the delay between the State's complaint and Defendant's trial created a presumption of prejudice, and nothing in this opinion should be read to condone the delay that occurred in this case. However, the second factor weighs in favor of the State because the majority of the delays in this case occurred for neutral reasons, and the comparatively minor delays attributable to the State were not caused in bad faith and are outweighed by Defendant's own requests for continuances and the motions he filed throughout the proceedings.  The third factor also favors the State, because Defendant waited until nearly five years after the complaint was filed to make an assertion of his right to a speedy trial that was not waived.  Most importantly, the fourth, and most significant, *Barker* factor weighs heavily in favor of the State because Defendant has failed to present any evidence of actual prejudice.  *See Greenlee*, 327 S.W.3d at 612-13.  Not only has Defendant failed to show how the delay caused him anxiety or impaired his defense, but immediately after the charges were filed in this case, Defendant was arrested, convicted, and sentenced to a thirty-year prison term on separate federal charges.  Therefore, after *de novo*

review, this Court holds the presumption of prejudice is outweighed under the circumstances of this case and Defendant's Sixth Amendment right to a speedy trial was not violated. *See Smith*, 491 S.W.3d at 308-09 (similarly holding). Point one is denied.

**B.      Defendant's Second Point on Appeal**

In Defendant's second point on appeal, he argues the trial court erred in denying his motion to suppress evidence and admitting physical evidence seized during a search of his home. Defendant specifically contends the search of his home violated the Fourth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 15, of the Missouri Constitution in that federal agents and members of the Missouri State Highway Patrol conducted the search rather than a Missouri "peace officer" as required under section 542.276.7 RSMo Cum. Supp. 2012 (effective from August 28, 2010, to the present).[2]

**1.      Standard of Review**

In this case, Defendant filed a motion to suppress evidence arguing the search warrant was invalid because it was not executed by a "peace officer." After a suppression hearing, the trial court denied Defendant's motion to suppress. Defendant timely objected at trial when evidence seized during the search in question was introduced by the State. Defendant also included the denial of the motion to suppress and the admission of the evidence in question in his motion for new trial. Based on the foregoing, Defendant's claim of error was properly preserved at trial. *See State v. Robinson*, 194 S.W.3d 379, 380 (Mo. App. W.D. 2006).

Our review of a trial court's denial of a motion to suppress is limited to a determination of whether the decision is supported by substantial evidence. *State v. Donovan*, 539 S.W.3d 57, 64 (Mo. App. E.D. 2017). In making this determination, we consider the evidence presented at both the suppression hearing and at trial, and we view the facts and reasonable inferences

---

[2] Unless otherwise indicated, all further statutory references are to RSMo Cum. Supp. 2012 (effective from August 28, 2010, to the present).

13

therefrom in the light most favorable to the trial court's ruling. *State v. Haneline*, 670 S.W.3d 14, 22 (Mo. App. E.D. 2023). This Court will reverse the trial court's ruling only if it is clearly erroneous, i.e., only if we are left with a definite and firm impression that a mistake has been made. *State v. Loggins*, 445 S.W.3d 105, 109 (Mo. App. E.D. 2014). While we defer to the trial court's determinations of witness credibility and factual findings, we review questions of law such as whether a constitutional provision was violated *de novo*. *Donovan*, 539 S.W.3d at 64-65.

It is within a trial court's broad discretion to admit or exclude evidence at trial and an evidentiary ruling is reviewed for an abuse of discretion. *State v. Hood*, 451 S.W.3d 758, 765 (Mo. App. E.D. 2014). A trial court abuses its discretion when its decision "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id*. We will only reverse an evidentiary error if prejudice is demonstrated, i.e., if there is a reasonable probability the trial court's alleged error affected the outcome of the trial. *Id*.

Finally, statutory interpretation is an issue of law an appellate court reviews *de novo*. *State v. Richey*, 569 S.W.3d 420, 423 (Mo. banc 2019). "When interpreting a statute, each word, clause, sentence, and section of a statute should be given meaning." *Id*. (internal quotations and citation omitted). "[C]ourts must give effect to legislative intent as reflected in the plain language of the statute." *State v. Hurst*, 663 S.W.3d 470, 474 (Mo. banc 2023). Additionally, "[i]t is the general rule that in statutes the word 'may' is permissive only, and the word 'shall' is mandatory." *Wolf v. Midwest Nephrology Consultants, PC.*, 487 S.W.3d 78, 83 (Mo. App. W.D. 2016) (quoting *State ex inf. McKittrick v. Wymore*, 119 S.W.2d 941, 944 (Mo. banc 1938)).

**2.      General Law and Analysis**

Pursuant to Missouri law, "[a] search warrant . . . may be executed only by a peace officer. The warrant issued shall be executed by conducting the search and seizure commanded . . .." Section 542.276.7. A "peace officer" is defined as "a police officer or member of the

14

highway patrol to the extent otherwise permitted by law to conduct searches, sheriff or deputy sheriff." Section 542.261. Missouri law also states that an "officer may summon as many persons as he deems necessary to assist him in executing the warrant . . .." Section 542.291.3 RSMo 2000 (effective from August 28, 1989, to the present).[3]

On January 28, 2013, a Missouri State Highway Patrol Officer sought a search warrant for Defendant's home. The warrant was issued the same day, authorizing "any peace officer in the state of Missouri" to search Defendant's home for "DNA, blood, any personal effects of [Victim], [or] any weapon/item that could be used to harm or dispose of a person or body . . .." The State executed the search warrant on January 29, 2013, seizing, *inter alia*, carpet fibers, carpet tacking, a baseball bat, and other items containing blood. The search warrant was executed by a Missouri State Highway Patrol Master Sergeant, three additional "civilian lab employees" of the Missouri State Highway Patrol, and members of the FBI Evidence Response Team.

Defendant argues the trial court should have suppressed the fruits of the search because the search warrant for Defendant's home was executed by FBI agents and members of the Missouri State Highway Patrol rather than a Missouri "peace officer." However, a plain reading of section 542.261 clearly defines "member[s] of the highway patrol" as "peace officer[s]." *See* section 542.261. Further, the parties to this case stipulated that a Missouri State Highway Patrol Master Sergeant was both present during the search warrant's execution and took custody of the fruits of the search. Defendant's contention that the search was invalid because the Highway Patrol Master Sergeant did not conduct the "actual search" has no merit because section 542.291.3 specifically permits an officer to have other agents, including members of the FBI and Highway Patrol, "assist him in executing the warrant." *See* section 542.291.3.

---

[3] Unless otherwise indicated, all further statutory references to section 542.291 are to RSMo 2000 (effective from August 28, 1989, to the present).

Based on the foregoing, the search warrant for Defendant's home was properly executed in accordance with Missouri law. The trial court's denial of the motion to suppress was not clearly erroneous and the trial court did not abuse its discretion in admitting the evidence seized during the search of Defendant's home. Point two is denied.

## C.      Defendant's Third Point on Appeal

Defendant's third and final point on appeal claims the trial court erred in admitting thirteen photographs that displayed the logo of a motorcycle club ("Photographs") because the evidence was allegedly prejudicial to his case.

### 1.      Standard of Review

Defendant has failed to preserve this issue for appeal. "Courts have long held that a motion in limine preserves nothing for appeal." *State v. Chambers*, 234 S.W.3d 501, 512 (Mo. App. E.D. 2007). "To preserve a pretrial objection, a party must renew the objection in court and make a record that identifies not only the action to which the party is objecting but also the legal basis for the objection." *Petersen v. State*, 658 S.W.3d 512, 515 (Mo. banc 2022) (citation omitted). "Only an objection made timely *at trial* will preserve an issue for appeal." *Id*. (emphasis in original). In this case, although Defendant filed a motion in limine requesting the trial court to exclude any evidence regarding his alleged motorcycle club membership, Defendant failed to timely object on the grounds of prejudice when the Photographs displaying the logo of a motorcycle club were introduced at trial.[4] Accordingly, his claim on appeal is not preserved. *See id*.; *Chambers*, 234 S.W.3d at 512.

Where an appellant fails to preserve an issue for appeal, this Court may still hear such a claim pursuant to Missouri Supreme Court Rule 30.20 (effective from January 1, 1988, to the

---

[4] Defendant did object at the time the Photographs were introduced on the grounds that the January 29, 2013, search of his home was invalid. *See* Section II.B. of this opinion. However, "[t]he objection at trial must be specific, and on appeal, the same grounds must be relied upon." *Petersen*, 658 S.W.3d at 515 (citation omitted). An objection may not be broadened on appeal. *Id*. at 516.

present). *See State v. McKay*, 411 S.W.3d 295, 304 (Mo. App. E.D. 2013). Under plain-error review, we will only grant a defendant relief if we find an error occurred which affected his rights so substantially that a manifest injustice or miscarriage of justice resulted. *Id*. Plain errors are those which are evident, obvious, and clear, and our Court determines whether such errors exist based on the circumstances of each case. *Id*. at 304-05. The defendant has the burden of demonstrating a manifest injustice or miscarriage of justice resulted from the alleged error. *Id*. at 304.

### 2.      Analysis of Defendant's Argument on Appeal

Defendant argues the admission of thirteen Photographs displaying the logo of a motorcycle club was erroneous and prejudicial because the Photographs indicated Defendant was associated with criminal activity. For the reasons discussed below, we disagree.

Generally, the State may not introduce evidence of uncharged crimes or other bad acts committed by a defendant to demonstrate his predisposition to commit crimes. *Davidson v. State*, 308 S.W.3d 311, 318 (Mo. App. E.D. 2010). "However, vague or speculative references to [a] defendant's involvement in other crimes do not constitute evidence of [a] defendant's direct association with a crime." *Id*. at 318-19. "[A] defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility." *State v. Slagle*, 206 S.W.3d 404, 410 (Mo. App. W.D. 2006).

In this case, the thirteen Photographs displaying the logo of a motorcycle club were mixed in among over one hundred other photographs that did not contain the logo. Additionally, several of the thirteen Photographs at issue on appeal reveal only a partial view of a logo which is mostly unidentifiable. Moreover, no testimonial evidence regarding Defendant's alleged membership in the motorcycle club was presented during the trial. Perhaps most importantly,

there was no evidence presented at trial that the motorcycle club depicted in the logo – or any motorcycle club – committed any crimes or bad acts.

Under the above circumstances, we hold the Photographs merely represented a vague and indefinite reference to Defendant's potential affiliation with a motorcycle club, and, therefore, the Photographs did not constitute inadmissible evidence of uncharged crimes or other bad acts by Defendant. *See id.*; *Davidson*, 308 S.W.3d at 318-19. Therefore, the trial court did not err, plainly or otherwise, in admitting the Photographs.[5] *See id.* Point three is denied.

### III. CONCLUSION

Based on the foregoing, the trial court's judgment is affirmed.

_____
ROBERT M. CLAYTON III, Presiding Judge

Philip M. Hess, J., and
Cristian M. Stevens, J., concur.

---

[5] We note that Defendant advances a separate constitutional argument regarding the same Photographs and his right to freedom of association under the First Amendment to the U.S. Constitution. Defendant failed to timely preserve this objection at trial. *Peterson*, 658 S.W.3d at 515-16 ("To preserve a pretrial objection, a party must renew the objection in court and make a record that identifies not only the action to which the party is objecting but also the legal basis for the objection. Only an objection made timely *at trial* will preserve an issue for appeal. The objection at trial must be specific, and on appeal, the same grounds must be relied upon. Further, a claim of constitutional error must be raised at the first opportunity and with citation to specific constitutional objections.") (internal citations and quotations omitted) (emphasis in original). Additionally, Defendant relies solely on *Dawson v. Delaware*, 503 U.S. 159 (1992), which is distinguishable from the facts here. The *Dawson* Court's holding rested on a narrow stipulation to the defendant's membership in a racist organization. *Id.* at 165. In this case, there was no such stipulation to Defendant's membership in a motorcycle club nor any mention of the organization during the presentation of evidence at trial. Therefore, this argument is without merit.